**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JUNE 6, 2007

DIANE BUKOWSKI and MICHIGAN CITIZEN,

      Plaintiffs-Appellees,

v

No. 129409

CITY OF DETROIT,

      Defendant-Appellant.

_____

MEMORANDUM OPINION.

The single issue we consider in this case is whether the "frank communication" exemption, MCL 15.243(1)(m), of the Freedom of Information Act (FOIA), exempts communications and notes that are no longer preliminary to a final agency determination of policy or action, even if those communications and notes were preliminary at the time that they were made. The Court of Appeals held that the frank communication exemption does not protect from disclosure communications and notes that are no longer preliminary to a final agency determination of policy or action. We reject that holding. The phrase "preliminary to a final agency determination of policy or action" forms part of the statutory definition of a "frank communication." The statutory definition,

however, contains no reference to the timing of the FOIA request. Thus, it is only pertinent whether those communications and notes were preliminary to a final agency determination at the time they were created, not whether they were preliminary at the time the FOIA request was made. Accordingly, we reverse the Court of Appeals judgment and remand this case to the trial court for further proceedings consistent with this decision.

I. FACTS AND PROCEDURAL HISTORY

In May 2000, Detroit Police Chief Benny Napoleon directed Deputy Chief Walter Shoulders to head a three-person Executive Board of Review to investigate a perceived problem of police officer misconduct, particularly by Officer Eugene Brown,[1] and the department's subsequent mishandling of investigations of that misconduct. In October 2000, the board completed and compiled its findings and recommendations in a written document known as the Shoulders Report. The Shoulders Report included information about the shootings, facts about Officer Brown's background, training, and disciplinary history, and interviews from eyewitnesses, coworkers, and other persons.

In June 2002, plaintiff Diane Bukowski, a reporter with coplaintiff Michigan Citizen, sought a copy of the Shoulders Report through a FOIA request. Defendant denied the request, invoking exemptions under MCL 15.243(1)(b)(*i*)

---

[1] Officer Brown had been involved in the fatal shootings of three civilians and the wounding of a fourth in four separate incidents from 1995 to 1999.

and (*ii*),[2] and the frank communication exemption, MCL 15.243(1)(m). Plaintiffs subsequently filed suit against defendant, seeking the report pursuant to the FOIA. Both sides moved for summary disposition. Defendant conceded in the trial court that it was no longer relying on the exemption in MCL 15.243(1)(b) because the Wayne County Prosecutor had declined to file charges against Officer Brown. Defendant, however, continued to assert the frank communication exemption and also claimed that the report was exempt under the law enforcement personnel records exemption, MCL 15.243(s)(ix).[3]

The trial court granted in part and denied in part the parties' motions for summary disposition. It ruled that "the government has met its burden of proving that much of the Shoulders report is exempt and those portions of the report that

---

[2] MCL 15.243(1)(b)(*i*) and (*ii*) state, in pertinent part:

> (1) A public body may exempt from disclosure as a public record under this act any of the following:
>
> * * *
>
> (b) Investigating records compiled for law enforcement purposes, but only to the extent that disclosure as a public record would do any of the following:
>
> (*i*) Interfere with law enforcement proceedings.
>
> (*ii*) Deprive a person of the right to a fair trial or impartial administrative adjudication.

[3] Defendant also maintained that the Employee Right to Know Act, MCL 423.509(2), protected from disclosure certain information taken from Brown's personnel file.

are not specifically exempted and are pure and factual are discoverable." It ordered the redaction of the deliberative portions of the Shoulders Report and ordered disclosure of the factual material to plaintiffs. The trial court denied plaintiffs' request for an in camera inspection of the report.

Both sides appealed the trial court's decision. The Court of Appeals, in an unpublished opinion per curiam, reversed the trial court and remanded for further proceedings.[4] With respect to the frank communication exemption, the panel opined:

> Plaintiff argues that, although the Shoulders Report may have been prepared as "preliminary to a final agency determination of policy or action," the frank communications exemption does not apply because there is no evidence that the Shoulders Report is *currently* preliminary to any agency determination of policy or action. We direct the trial court to address this issue on remand. On remand, the court should take into account that MCL 15.243(1)(m) provides that the frank communications exemption applies only if the communications "*are* preliminary to a final agency determination of policy or action" (emphasis added), not "*were* preliminary to a final agency determination of policy or action." Thus, if the Shoulders Report contains communications that are no longer preliminary to an agency determination of policy or action, the frank communications exemption does not apply to these communications. [Slip op at 5-6.]

---

[4] *Bukowski v Detroit,* unpublished opinion per curiam of the Court of Appeals, issued May 26, 2005 (Docket No. 256893).

The panel remanded so the trial court could apply the frank communication exemption consistent with its ruling and could separate the purely factual material in the process.[5]

Defendant filed an application for leave to appeal in this Court. We ordered oral argument on the application, specifically requesting the parties to address

> whether the Court of Appeals erred in instructing the Wayne Circuit Court, on remand, that the Freedom of Information Act "frank communications" exemption, MCL 15.243(1)(m), does not apply to communications that are no longer preliminary to an agency determination of policy or action, even if the communications were preliminary at the time that they were made. [477 Mich 960 (2006).]

## II. STANDARD OF REVIEW

This Court reviews questions of statutory interpretation de novo.[6] The goal of statutory interpretation is to give effect to the Legislature's intent as determined from the language of the statute.[7] In order to accomplish this goal, this Court interprets every word, phrase, and clause in a statute to avoid rendering any

---

[5] The Court of Appeals also held that the trial court misapplied the burdens in the balancing test found in the personnel records exemption. It remanded the case to the trial court for proper application of the exemption.

Finally, the Court rejected plaintiffs' argument on cross-appeal that the trial court erred in rejecting their requests for an in camera inspection of the Shoulders Report.

[6] *Herald Co v Eastern Michigan Univ Bd of Regents*, 475 Mich 463, 470; 719 NW2d 19 (2006).

[7] *Miller v Miller*, 474 Mich 27, 30; 707 NW2d 341 (2005).

5

portion of the statute nugatory or surplusage.[8]  We give the words of a statute their plain, ordinary meaning unless the Legislature employs a term of art.[9]

## III.  ANALYSIS

The frank communication exemption, MCL 15.243(1)(m), states in pertinent part:

> (1) A public body may exempt from disclosure as a public record under this act any of the following:
>
> * * *
>
> (m) Communications and notes within a public body or between public bodies of an advisory nature to the extent that they cover other than purely factual materials and *are preliminary to a final agency determination of policy or action.*  This exemption does not apply unless the public body shows that in the particular instance the public interest in encouraging frank communication between officials and employees of public bodies clearly outweighs the public interest in disclosure . . . . [Emphasis added.]

In *Herald Co,* this Court examined the frank communication exemption. Drawing from the text of this provision and other portions of the FOIA, we set forth a framework for courts to apply the frank communication exemption.  First, the public body seeking to withhold the document bears the burden of establishing the exemption.  Second, the public record sought to be withheld from disclosure must meet the three-part statutory definition of a "frank communication": (1) it is a communication or note of an advisory nature made within a public body or

---

[8] *Herald Co*, *supra,* 475 Mich at 470.

[9] *Veenstra v Washtenaw Country Club*, 466 Mich 155, 160; 645 NW2d 643 (2002); MCL 8.3a.

between public bodies, (2) it covers other than purely factual material, and (3) it is preliminary to a final agency determination of policy or action. Third, if the public record qualifies as a "frank communication," the trial court must engage in the balancing test and determine if the public interest in encouraging frank communication clearly outweighs the public interest in disclosure. Finally, if the trial court determines that the frank communication should not be disclosed, the FOIA still requires the trial court to redact the exempt material and disclose the purely factual material within the document. [10]

> The Court of Appeals instructed the trial court that
>
> the frank communications exemption applies only if the communications "*are* preliminary to a final agency determination of policy or action" (emphasis added), not "*were* preliminary to a final agency determination of policy or action." Thus, if the Shoulders Report contains communications that are no longer preliminary to an agency determination of policy or action, the frank communications exemption does not apply to these communications. [Slip op at 6.]

The Court of Appeals misconstrued the frank communication exemption because the requirement that communications or notes "are preliminary to a final agency determination of policy or action" has nothing to do with the timing of the FOIA request. Rather, this phrase speaks to the *purpose* of the communications or notes *at the time of their creation*. The first sentence of MCL 15.243(1)(m) provides the *definition* of a "frank communication." It qualifies what types of communications and notes are eligible for exemption under this provision. The phrase "are

---

[10] *Herald Co, supra,* 475 Mich at 475.

preliminary to a final agency determination of policy or action" modifies "communications and notes."[11] The inclusion of this limiting phrase signifies the Legislature's intent to exclude from the ambit of the frank communication exemption those communications and notes that were not preliminary to a final agency determination of policy or action when they were created. Therefore, plaintiffs' and Justice Kelly's reliance on the Legislature's use of the present tense "are" in that phrase is misplaced. Our reading of the statute gives effect to the present tense of the verb because the communications or notes "*are* preliminary to a final agency determination" at the time they are created.[12]

Moreover, we find additional textual support in other FOIA exemptions where the Legislature drafted explicit time limits when an exemption ceases to protect a public record. For instance, MCL 15.243(1)(i) exempts "[a] bid or proposal by a person to enter into a contract or agreement, *until* the time for the public opening of bids of proposals, or . . . *until* the deadline for submission of

---

[11] The communications or notes, in addition to being "preliminary to a final agency determination of policy or action" must also be (1) of an advisory nature made within a public body or between public bodies that (2) covers other than purely factual material.

[12] Justice Kelly argues that there was no longer a need for frank communications at the time of the FOIA request. However, before that determination is made by balancing the competing interests, a court must first consider whether "frank communications" are at issue. One part of the definition of a frank communication is that the communications and notes "are preliminary to a final agency determination" at the time they are created. Unless the communications and notes satisfy this part of the definition, the public body cannot successfully invoke this exemption.

bids or proposals has expired." (Emphasis added.) Similarly, MCL 15.243(1)(j) exempts "[a]ppraisals of real property to be acquired by the public body *until*" either "an agreement is entered into" or "three years have elapsed since the making of the appraisal, unless litigation relative to the acquisition has not yet terminated." MCL 15.243(1)(p) exempts particular types of testing data developed by a public body except that the exemption ceases to apply "after 1 year has elapsed from the time the public body completes the testing." The absence of similar explicit time limits in the frank communication exemption supplies further evidence that the Legislature intended this exemption to apply to communications and notes after the final agency determination of policy or action has been made.[13]

---

[13] Both sides present arguments unrelated to the statutory language at issue. Defendant argues that it would be poor public policy if the frank communication exemption ceased to apply to a public record once the agency makes its final determination. Plaintiffs argue that the legislative history behind the frank communication exemption supports their interpretation of the provision, and they draw parallels between this statute and similar provisions in the federal FOIA. Justice Kelly also relies heavily on legislative history, the federal FOIA, the "general purpose" of the FOIA to disclose public records, and the notion that FOIA exemptions are to be narrowly construed. As the plain language in the statute is sufficient to discern the Legislature's intent and to resolve this case, we decline to consider these nontextual arguments.

Justice Kelly makes the astonishing argument that adherence to the statutory language makes a court "deliberately uninformed" and *more* prone to impose its policy preferences. Whether or not statutory construction is difficult, we are certain that, far and away, the most "reliable source" of legislative intent is the plain language of a statute. Judicial power is most menacing when a court feels free to roam in search of interpretive cues that are unmoored to the statutory language. Therefore, we are not inclined to inform ourselves of extratextual sources where the language of the statute is plain. When grammar is the

(continued…)

For these reasons, we reject the Court of Appeals reading of the frank communication exemption. We reverse the judgment of the Court of Appeals on this issue, and we remand this case to the trial court for further proceedings consistent with this opinion.

Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

_____
(…continued)
constructive tool of choice, all can readily ascertain what a statute commands. But when extratextual tools are brought to bear on otherwise unambiguous language, only judges can say what the statute "means"—and then only after the fact. We prefer interpretive methods available to all.

10

STATE OF MICHIGAN

SUPREME COURT

DIANE BUKOWSKI and MICHIGAN
CITIZEN,

        Plaintiffs-Appellees,

v                                   No. 129409

CITY OF DETROIT,

        Defendant-Appellant.

_____

CAVANAGH, J. (*concurring in the result only*).

The majority holds that the plain language of the "frank communications"
exemption, MCL 15.243(l)(m), of the Freedom of Information Act (FOIA)
exempts communications and notes that were preliminary to an agency
determination of policy or action at the time they were created. Although I agree
with the result reached by the majority and much of its reasoning, I write
separately because I would not rely solely on a textualist approach to statutory
interpretation in this case.

Certainly, statutory interpretation must begin with an examination of the
language of the statute. But it is often helpful to use other methods of statutory
interpretation, such as legislative history, when a statute is susceptible to different
interpretations. Particularly applicable in this case is the maxim that "[i]f the
meaning of a statute is unclear, a court must consider the object of the statute and

apply a reasonable construction that best accomplishes the Legislature's purpose." *Rowell v Security Steel Processing Co*, 445 Mich 347, 354; 518 NW2d 409 (1994). While FOIA is intended to be a pro-disclosure statute, the frank communications exemption recognizes a valid public interest in encouraging frank communications within public bodies during deliberations. Allowing disclosure of all preliminary communications once a final determination has been made would undermine the valid interest in encouraging frank communications. But this exemption is not without bounds: the balancing test associated with the frank communications exemption is vital to ensuring that the exemption does not engulf the general rule, which favors disclosure. Accordingly, I concur in the result reached by the majority.

Michael F. Cavanagh

S T A T E   O F   M I C H I G A N

SUPREME COURT

DIANE BUKOWSKI and MICHIGAN
CITIZEN,

       Plaintiffs-Appellees,

v                                     No. 129409

CITY OF DETROIT,

       Defendant-Appellant.

_____

WEAVER, J. (*dissenting*).

      I concur with Justice Kelly's well-reasoned dissent and note that the majority's decision further reduces the public's ability to use the Freedom Of Information Act (FOIA) to learn how the people's business is conducted.

                                     Elizabeth A. Weaver

STATE OF MICHIGAN

SUPREME COURT

DIANE BUKOWSKI and MICHIGAN
CITIZEN,

        Plaintiffs-Appellees,

v                                  No. 129409

CITY OF DETROIT,

        Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

The issue presented is whether the "frank communications" exemption[1] of the Michigan Freedom of Information Act[2] (FOIA) applies to communications and notes that were preliminary to final agency action when made but were no longer preliminary when requested. A majority of this Court has decided that the exemption applies as long as the communications were preliminary to final agency action at the time of their creation. Because I find this result to be inconsistent with the statutory language, the legislative history, and the purpose of the exemption, I must respectfully dissent.

---

[1] MCL 15.243(1)(m).

[2] MCL 15.231 *et seq.*

FACTS

Plaintiffs Diane Bukowski, a news reporter, and the *Michigan Citizen*, a newspaper, sought release of the Shoulders Report from defendant City of Detroit. An Executive Board of Review (EBR) of the Detroit Police Department wrote the report.[3] Its preparation was occasioned by the involvement of Detroit police officer Eugene Brown in numerous shooting incidents that left three people dead and six injured. The Detroit Police Department undertook internal investigations into Officer Brown's conduct. After public concern was expressed at the response of the department to Officer Brown's actions, the chief of police directed the EBR to review the internal investigations. The EBR's mission was to review Brown's actions and the department's response to those actions.

On June 6, 2002, plaintiffs filed a FOIA request for a complete copy of the Shoulders Report. Defendant denied the request, stating:

> Your request is denied pursuant to MCL 15.243(1)(b)(i) and (ii) for the reason that the report you requested is an investigating record compiled for law enforcement purpose[s] and disclosing the report would interfere with law enforcement proceedings and deprive Officer Brown and others [of] the right to a fair trial or impartial administrative adjudication. Moreover, contained in the Shoulder[s] report are communications and notes with[in] a public body of an advisory nature to the extent they cover other than purely factual material and are preliminary to a final agency determination of policy or action. Accordingly, your request is also denied pursuant to MCL 15.243(1)(m).

---

[3] The report gets its name from Deputy Chief Walter Shoulders. Deputy Chief Shoulders was appointed as chairman of the EBR.

5

On December 6, 2002, plaintiffs filed a complaint seeking release of the report. Both sides filed motions for summary disposition. Defendant continued to assert that the report was exempted by the frank communications exemption and also claimed that it was exempt under the "law enforcement personnel records" exemption, MCL 15.243(s)(*ix*).[4] After oral argument on the motions, the trial court indicated that it would partially grant both motions. The court denied plaintiffs access to the deliberative portions of the report, determining the material to be exempt. However, it rejected defendant's contention that the material was exempt under the personnel records exemption. Both sides appealed from the trial court's decision.

In a unanimous unpublished opinion, the Court of Appeals reversed and remanded. Unpublished opinion per curiam, issued May 26, 2005 (Docket No. 256893). It decided that the trial court had correctly articulated the personnel records exemption but incorrectly applied the exemption to determine whether the public interest in disclosure outweighed the interest in nondisclosure. With respect to the frank communications exemption, the Court decided that the trial court had incorrectly applied the balancing test. It also held that the frank communications exemption "applies only if the communications '*are* preliminary

---

[4] Defendant withdrew its claim of exemption under MCL 15.243(1)(b) because "at the present time, we do not have any knowledge that there is any law enforcement proceedings that may be interfered with or that would jeopardize any rights to a fair trial or impartial adjudication of the matter if the Shoulders report were to be released."

6

to a final agency determination of policy or action' (emphasis added), not '*were* preliminary to a final agency determination of policy or action.'" *Id.,* slip op at 6. The Court of Appeals directed the trial court to consider this issue on remand.

Defendant filed a motion for reconsideration challenging the Court of Appeals decision on the frank communications exemption. The Court of Appeals denied the motion, and defendant applied for leave to appeal in this Court. This Court heard oral argument on the application, having directed the parties to "address whether the Court of Appeals erred in instructing the Wayne Circuit Court, on remand, that the Freedom of Information Act 'frank communications' exemption, MCL 15.243(1)(m), does not apply to communications that are no longer preliminary to an agency determination of policy or action, even if the communications were preliminary at the time that they were made." 477 Mich 960 (2006).

## STANDARD OF REVIEW

This Court reviews issues of statutory interpretation de novo. *Coblentz v City of Novi*, 475 Mich 558, 567; 719 NW2d 73 (2006). When interpreting a statute, the task is to ascertain and give effect to "the purpose and intent of the Legislature by examining the provisions in question. The statutory words must be considered in light of the general purpose sought to be accomplished." *People v Smith*, 423 Mich 427, 441; 378 NW2d 384 (1985).

7

ANALYSIS

The frank communications exemption to FOIA, MCL 15.243(1)(m), states:

> (1) A public body may exempt from disclosure as a public record under this act any of the following:
>
> * * *
>
> (m) Communications and notes within a public body or between public bodies of an advisory nature to the extent that they cover other than purely factual materials and are preliminary to a final agency determination of policy or action. This exemption does not apply unless the public body shows that in the particular instance the public interest in encouraging frank communication between officials and employees of public bodies clearly outweighs the public interest in disclosure.

In *Herald Co, Inc v Eastern Michigan Univ Bd of Regents*,[5] this Court held that documents are frank communications if (1) they are communications and notes within a public body or between public bodies of an advisory nature that (2) cover other than purely factual materials and (3) are preliminary to a final agency determination of policy or action. *Id.* at 475. If the documents fail any one of these threshold qualifications, then the frank communications exemption does not apply. This case concerns the third element. The issue is whether the requirement that the communications be preliminary to a final agency determination is measured from when the documents are created or when disclosure is requested.

The frank communications exemption exempts from disclosure "[c]ommunications and notes within a public body or between public bodies of an

---

[5] 475 Mich 463; 719 NW2d 19 (2006).

8

advisory nature to the extent that they cover other than purely factual materials and *are preliminary to a final agency determination of policy or action.*" This exemption is written in the present tense.[6] By using the present tense, the Legislature has indicated that, at the moment the exemption is invoked, the communications and notes must be preliminary to a final agency determination or action.[7]

Accordingly, the Court of Appeals correctly held that the frank communications exemption applies only if the communications "are preliminary" to a final agency determination of policy or action at the time the request is made. If the Legislature wanted the determinative time to be when the communications were created, it would have used the word "were."[8] It chose not to do so, and the statutory language should be understood accordingly. It is not the function of the courts to rewrite statutes. *Hesse v Ashland Oil, Inc*, 466 Mich 21, 30-31; 642 NW2d 330 (2002).

---

[6] The word "are" is defined as the present indicative plural and second person singular of "be." *Random House Webster's College Dictionary* (2001).

[7] "Present" is defined as "being, existing, or occurring at this time or now; current." *Random House Webster's College Dictionary* (2001).

[8] By finding that the frank communications exemption applies to communications that "were" preliminary to final agency action, the majority ignores MCL 8.3a. This section governs statutory construction and provides that "words and phrases shall be construed and understood according to the common and approved usage of the language." The word "are" does not commonly have the same definition as the word "were."

MCL 15.243(1) is the provision that gives public bodies the authority to exempt from disclosure material that falls within the terms of one of the specific exemptions. It, too, supports a finding that the frank communications exemption applies only if the communications are preliminary to a final agency action at the time of the request. MCL 15.243(1) provides that "[a] public body may exempt from disclosure as a public record under this act any of the following . . . ." This provision is also written to be applied in the present. This is because the public body cannot decide whether the requested material falls within one of the exemptions until a member of the public makes a request for disclosure.

For this reason, it is illogical to look back in time, as the majority interpretation requires, in deciding whether the requested material is exempt. The more natural interpretation is to look at the material at the time of the request in order to decide whether an exemption applies.[9] Only if the terms of the exemption specifically use language indicating that another point in time is determinative should a point in time other than the present be considered. For example, the

---

[9] Another example of a provision in which the measuring time is determinative is MCL 15.243(g). It provides an exemption for "[i]nformation or records subject to the attorney-client privilege." Information that at one time was subject to the attorney-client privilege can become unprotected. Thus, the measuring time is determinative. If the determinative time is when the communication was created, material that was once exempt will always be exempt. If the determinative time is when the request is made, material that was once exempt could be subject to disclosure.

majority claims that MCL 15.243(1)(i)[10] and (j)[11] support their interpretation by using the word "until." Actually, these provisions undermine their position, because they specifically provide that some time in the past, or the future, is determinative. Unlike them, the frank communications exemption speaks in the present tense.

Holding that the frank communications exemption applies only if the communications are preliminary to a final agency determination of policy or

---

[10] MCL 15.243(1)(i) provides:

(1) A public body may exempt from disclosure as a public record under this act any of the following:

* * *

(i) A bid or proposal by a person to enter into a contract or agreement, until the time for the public opening of bids or proposals, or if a public opening is not to be conducted, until the deadline for submission of bids or proposals has expired.

[11] MCL 15.243(1)(j) provides:

(1) A public body may exempt from disclosure as a public record under this act any of the following:

* * *

(j) Appraisals of real property to be acquired by the public body until either of the following occurs:

(*i*) An agreement is entered into.

(*ii*) Three years have elapsed since the making of the appraisal, unless litigation relative to the acquisition has not yet terminated.

11

action at the time of the request is (1) consistent with general purpose of FOIA and (2) consistent with the rule that FOIA exemptions are to be narrowly construed. See *Herald Co v Bay City*, 463 Mich 111, 119; 614 NW2d 873 (2000). The purpose clause of FOIA, MCL 15.231(2), provides:

> It is the public policy of this state that all persons, except those persons incarcerated in state or local correctional facilities, are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process.

Reading the frank communications exemption to apply only if the communications are preliminary to final action at the time of the request is consistent with this purpose. It ensures that citizens will get full and complete information regarding the affairs of government and the official acts of those who represent them. The majority's reading of the statute is inconsistent with this purpose and allows the exemption to swallow the rule.

It is also helpful to review the legislative history surrounding the particular exemption at issue. It supports the conclusion that the Legislature meant to extend the exemption only to those communications that are preliminary to a government decision at the time of the FOIA request.[12] The frank communications exemption

---

[12] This case presents a perfect example of what is wrong with a method of statutory interpretation that fails to consider all relevant sources in ascertaining legislative intent. As I have demonstrated, the majority's interpretation is not the most natural reading of the statutory language. Rather than test its interpretation to ensure that it reaches the correct result, the majority ignores numerous other

(continued…)

12

is a revision of the "deliberative process" privilege that existed in Michigan law before the adoption of FOIA. That privilege, contained at MCL 24.222, was part of the Administrative Procedures Act[13] and exempted from disclosure "[i]nteragency or intra-agency letters, memoranda, or statements which would not be available by law to a party other than an agency in litigation with the agency and which, if disclosed, would impede the agency in the discharge of its functions."

---

(…continued)

relevant sources that illustrate that its reading was not intended by the Legislature. "[T]he 'minimalist' judge 'who holds that the purpose of the statute may be learned only from its language' retains greater discretion than the judge who 'will seek guidance from every reliable source.' A method of statutory interpretation that is deliberately uninformed, and hence unconstrained, increases the risk that the judge's own policy preferences will affect the decisional process." *BedRoc Ltd, LLC v United States*, 541 US 176, 192; 124 S Ct 1587; 158 L Ed 2d 338 (Stevens, J., dissenting), quoting Barak, *Judicial Discretion* trans. Yadin Kaufmann (New Haven: Yale University Press, 1989) p 62.

The majority alleges that it is "astonishing" for me to claim that, by ignoring all sources aside from the statutory language, it could reach an uninformed decision. *Ante* at 9 n 13. The majority is too easily astonished. A decision that considers more pertinent information is generally more informed than one that considers less. Of course, I agree with the majority that the statutory language is a vital indicator of legislative intent. But what is "astonishing" is that anyone, no matter what the task, would ignore other helpful sources when trying to reach the correct answer to a difficult question. Ignoring helpful and relevant sources is not a good way to deal with most difficult decisions in life, and that includes statutory interpretation.

[13] MCL 24.201 *et seq.*

13

FOIA revised the deliberative process privilege to permit more access by the public to the government's workings. In fact, the original proposal for FOIA, House Bill 6085, specifically included preliminary inter- and intra-agency communications in the category of writings made available to the public under the act.[14] There was considerable debate over this section, however, with several agencies objecting to the bill's failure to grant a deliberative process exemption. House Legislative Analysis, HB 6085, September 21, 1976. In response, an amendment was offered to the bill. It read:

> 13. A public body may exempt from disclosure as a public record under this act:
>
> * * *
>
> (m) Communications between and within public bodies, including letters, memoranda, or statements which reflect deliberative or policy-making processes and are not purely factual, or investigative matter. [1976 Journal of the House 2842-2843.]

---

[14] The initial version of House Bill 6085 stated:

> Section 12. The following categories of writings are specifically made available to the public under this act if those writings exist and are not exempt under section 13:
>
> * * *
>
> (g) Communications between public bodies and within public bodies including preliminary intra[-]agency, interagency, and intergovernmental drafts, notes, recommendations, and memoranda in which opinions are expressed or policies discussed or recommended. [1976 Journal of the House 4152-4153.]

Under this amendment, the frank communications exemption would have applied in this case because there was no requirement that the communications be preliminary to a final agency determination of policy or action. But the proposed amendment was defeated.[15] *Id.* at 2843. Two months later, the original sponsor of the bill, Representative Bullard, proposed an amendment adding what is currently the frank communications exemption. 1976 Journal of the House 3210-3211.

The legislative history surrounding the adoption of the exemption indicates that the language used was carefully thought out. The final amendment, the first one to include the language "are preliminary to a final agency determination of policy or action," was a compromise. It reconciled one bill that would have explicitly allowed disclosure of all inter- and intra-agency communications, with another that would have explicitly exempted all deliberative communications. By using the word "are," the Legislature intended to strike a balance between exempting all frank communications and no frank communications. The majority ignores this balance by exempting all nonfactual communications made during the deliberative process.

The fact that the frank communications exemption of FOIA replaced MCL 24.222 of the Administrative Procedures Act is also relevant. The FOIA legislation was introduced because it was thought that the access provided by the

---

[15] The defeat of this amendment indicates that the Legislature rejected exempting all nonfactual communications that occur during the deliberative process. However, this is exactly the result reached by the majority.

Administrative Procedures Act was "insufficient, unclear, and extremely unspecific." House Legislative Analysis, HB 6085, September 10, 1976. FOIA was intended to give the public greater access than it had before. *Id.* It follows that the Legislature intended less material to be exempt under the frank communications exemption than had been exempt under the Administrative Procedures Act.

MCL 24.222 mirrors the Federal Freedom of Information Act[16] exemption found at 5 USC 552(b)(5).[17] For this reason, caselaw interpreting the federal exemption is instructive in determining what material was exempt under the Administrative Procedures Act. *Int'l Business Machines Corp v Dep't of Treasury*, 71 Mich App 526, 535; 248 NW2d 605 (1976). The United States Supreme Court has found that the federal exemption applies to predecisional communications leading up to final policy or action but not to postdecisional

---

[16] 5 USC 552.

[17] MCL 24.222 exempted:

> Interagency or intra-agency letters, memoranda or statements which would not be available by law to a party other than an agency in litigation with the agency and which, if disclosed, would impede the agency in the discharge of its functions.

5 USC 552(b)(5) exempts

> inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]

communications. *Nat'l Labor Relations Bd v Sears, Roebuck & Co*, 421 US 132, 151-52; 95 S Ct 1504; 44 L Ed 2d 29 (1975). Hence, the United States Supreme Court has decided that the federal exemption applies to communications that were preliminary to final action at the time they were created.

By deciding as it does, the majority interprets our exemption consistently with the federal exemption. This is erroneous because the Legislature rejected this interpretation when it eliminated the Administrative Procedures Act. In place of the act, the Legislature enacted FOIA, which was intended to exempt less information than its predecessor. The majority opinion fails to take cognizance of this point.

Whether one considers the language of the statute or its legislative history, the conclusion is inescapable: the Legislature intended the frank communications exemption to apply only when communications are preliminary to final action at the time a FOIA request is made. In the present case, advisory communications and notes that are the subject of the Shoulders Report may have been preliminary to a final agency determination of policy or action at some point in the past. However, once the documents were no longer preliminary to agency action, they should have been immediately released when properly sought under FOIA. The Court of Appeals was correct in remanding the case to the trial court for a determination on this issue.

CONCLUSION

"When government begins closing doors, it selectively controls information rightfully belonging to the people." *Detroit Free Press v Ashcroft*, 303 F3d 681, 683 (CA 6, 2002) (opinion by Keith, J). This Court closes a door by giving the frank communications exemption an overly broad reading that the Legislature never intended. The result of this decision will be that materials that our Legislature intended to allow the public to access will forever be kept from the public eye. This decision undermines the very purpose of FOIA, which is to provide for an informed public so that the people can fully participate in the democratic process. I respectfully dissent from this erroneous decision.

Marilyn Kelly