YOUNG, J.
The question presented in this case is whether the Washtenaw Circuit Court (the circuit court) properly withheld from disclosure a letter (Doyle letter) written by Eastern Michigan University’s (EMU) Vice President of Finance Patrick Doyle to a member of defendant EMU Board of Regents, Jan Brandon. The circuit court held that the letter was exempt as a frank communication under the Freedom of Information Act (FOIA), MCL 15.231 et seq. The Doyle letter was written at Brandon’s request as part of defendant’s investigation of allegations that the then-president of EMU, Samuel Kirkpatrick, had run the construction of a new president’s house (University House project) precipitously over budget.
Applying the balancing test set forth in the statutory language of MCL 15.243(l)(m), the frank communica *467 tion exemption, the circuit court concluded that the public interest in encouraging frank communication clearly outweighed the public interest in disclosure and, therefore, that the Doyle letter was exempt from disclosure. The Court of Appeals affirmed in a split decision, determining that the circuit court did not commit clear error. We granted leave to appeal.
We affirm the result reached by the Court of Appeals, but we take this opportunity to clarify the appropriate standard of review of discretionary determinations in FOIA cases. In Federated Publications, Inc v City of Lansing,[1] we held that appellate courts must review the trial court’s discretionary determinations in FOIA cases for clear error. We continue to hold that the clear error standard of review is appropriate where the parties challenge the factual findings of the trial court. However, where the parties do not dispute the underlying facts but rather challenge the trial court’s exercise of discretion, we hold that an appellate court must review that determination for an abuse of discretion, which this Court now defines as a determination that is outside the principled range of outcomes.[2]
In this case, the parties do not dispute the underlying facts. Rather, they dispute the import of those facts as they factor into the weighted balancing test of the frank communication exemption. Accordingly, we review the circuit court’s decision to affirm the nondisclosure of the Doyle letter for an abuse of discretion. We hold that the circuit court reached a decision that was within the principled range of outcomes when it determined the *468 balance of competing interests favored nondisclosure and that it therefore did not abuse its discretion.
We also hold that, pursuant to MCL 15.244, the public body must “to the extent practicable, facilitate a separation of exempt from nonexempt information” and “make the nonexempt material available for examination and copying.” Accordingly, we remand this case to the circuit court to separate this material from the Doyle letter and make the nonexempt material available to plaintiff.
I. FACTS AND PROCEDURAL HISTORY
Established by the Michigan Constitution, which confers upon it “general supervision of the institution and the control and direction of all expenditures from the institution’s funds,”[3] defendant has broad constitutional and statutory[4] oversight to govern Eastern Michigan University. Pursuant to this constitutional mandate, defendant investigated the University House project controversy as it unfolded in 2003. The Doyle letter arose out of this internal investigation.
Plaintiff Herald Company, Inc., doing business as Booth Newspapers, Inc., and the Ann Arbor News, sent FOIA requests to defendant on September 10 and 11, 2003, as it conducted its own investigation, seeking numerous documents related to the University House project.[5] In an October 1, 2003, letter, defendant granted plaintiffs FOIA requests except where defendant indicated either the documents sought did not exist or were in the possession of a separate corporate *469 entity, the EMU Foundation. Defendant sent a second letter to plaintiff on October 7, 2003, that specifically identified the Doyle letter and advised plaintiff that it would not disclose the letter pursuant to the frank communication exemption of the FOIA.
On February 5, 2004, plaintiff filed simultaneously in the circuit court a complaint and an emergency motion to compel disclosure of the Doyle letter under the FOIA. After a hearing and viewing the letter in camera, the circuit court issued a written opinion and concluded that the Doyle letter met the statutory definition of a frank communication. In resolving the required statutory balancing test, the circuit court concluded that the balance favored nondisclosure. It permitted defendant to withhold the Doyle letter in its entirety.
*470 In a split, published decision, the Court of Appeals affirmed the circuit court.[6] Chief Judge WHITBECK filed a dissent, arguing that the circuit court committed clear error by misconstruing the balancing test. We subsequently granted plaintiffs application for leave to appeal.[7]
II. STANDARD OF REVIEW
This Court reviews questions of statutory interpretation de novo.[8] To effectuate the intent of the Legislature, we interpret every word, phrase, and clause in a statute to avoid rendering any portion of the statute nugatory or surplusage.[9]
In addition, certain FOIA provisions require the trial court to balance competing interests.[10] In Federated, this Court announced the appropriate standard of review of discretionary determinations in FOIA cases. While discussing both factual findings and discretionary determinations, we stated in Federated that when an appellate court is called upon to evaluate the trial court’s discretionary determinations, it must defer to the trial court’s decision unless there was clear error.[11] *471 Clear error exists only when the appellate court “is left with the definite and firm conviction that a mistake has been made.”[12]
Federated inadvertently misstated the appropriate standard of review for discretionary determinations in FOIA cases.[13] In Michigan, the clear error standard has historically been applied when reviewing a trial court’s factual findings[14] whereas the abuse of discretion standard is applied when reviewing matters left to the trial court’s discretion.[15] We take this opportunity to refine our position in Federated. First, we continue to hold that legal determinations are reviewed under a de novo *472 standard. Second, we also hold that the clear error standard of review is appropriate in FOIA cases where a party challenges the underlying facts that support the trial court’s decision. In that case, the appellate court must defer to the trial court’s view of the facts unless the appellate court is left with the definite and firm conviction that a mistake has been made by the trial court. Finally, when an appellate court reviews a decision committed to the trial court’s discretion, such as the balancing test at issue in this case, we hold that the appellate court must review the discretionary determination for an abuse of discretion and cannot disturb the trial court’s decision unless it falls outside the principled range of outcomes.[16]
III. THE FOIA AND THE FRANK COMMUNICATION EXEMPTION
The Legislature codified the FOIA to facilitate disclosure to the public of public records held by public bodies.[17] However, by expressly codifying exemptions to the FOIA, the Legislature shielded some “affairs of government” from public view. The FOIA exemptions signal particular instances where the policy of offering the public full and complete information about government operations is overcome by a more significant policy interest favoring nondisclosure.[18] In many of *473 these instances, the Legislature has made a policy determination that full disclosure of certain public records could prove harmful to the proper functioning of the public body. Indeed, in Federated we instructed that a circuit court “should remain cognizant of the special consideration that the Legislature has accorded an exemptible class of records.”[19]
The frank communication exemption at issue in this case provides that a public body may exempt from disclosure as a public record
[c]ommunications and notes within a public body or between public bodies of an advisory nature to the extent that they cover other than purely factual materials and are preliminary to a final agency determination of policy or action. This exemption does not apply unless the public body shows that in the particular instance the public interest in encouraging frank communication between officials and employees of public bodies clearly outweighs the public interest in disclosureN[20]
The frank communication exemption ultimately calls for the application of a weighted balancing test where the circuit court must weigh the public interest in disclosure versus the public interest in encouraging frank communication. Under the plain language of the provision, these competing interests are not equally situated, and the Legislature intended the balancing test to favor disclosure. The Legislature’s requirement that the public interest in disclosure must be clearly outweighed demonstrates the importance it has attached to disclosing frank communications absent significant, countervailing reasons to withhold the document. Hence, the public record is not exempt under the frank communication exemption unless *474 the public body demonstrates that the public interest in encouraging frank communication between officials and employees of public bodies clearly outweighs the public interest in disclosure.[21]
In addition to the statutory language initially favoring disclosure of a frank communication, it is important to consider carefully other words and phrases in the statutory text. First, we must be cognizant of the competing interests at stake in the particular instance [22] Rather than speak in platitudes and generalities, the parties and the courts must consider how the unique circumstances of the “particular instance” affect the public interest in disclosure versus the public interest in encouraging frank communication. Second, the Legislature decided that the public has an interest in encouraging frank communication so that public officials’ ongoing and future willingness to communicate frankly in the course of reaching a final agency determination is an essential component in the balancing test. Therefore, when a court interprets the “particular instance” in the frank communication exemption, it must remember that there is a valid public interest that officials and employees of a public body aspire to communicate candidly when the public body *475 considers an issue that is “preliminary to a final agency determination of policy or action.”
Before the trial court may apply the balancing test, the public body must demonstrate to the satisfaction of the trial court that the public record is a “frank communication.”[23] Drawing from the statutory language, the Court of Appeals has held that the public body must establish two things.[24] First, the document must cover other than purely factual materials, and, second, the document must be prehminary to a final determination of policy or action. We agree with the Court of Appeals precedent, but we conclude that a third qualification is apparent in the statutory language: the document sought must also be a communication or note of an advisory nature within a public body or between public bodies.
Therefore, a document is a “frank communication” if the trial court finds that it (1) is a communication or note of an advisory nature made within a public body or between public bodies, (2) covers other than purely factual material, and (3) is preliminary to a final agency determination of policy or action. If, in the trial court’s judgment, the document fails any one of these threshold qualifications, then the frank communication exemption simply does not apply. For example, if the document is composed entirely of purely factual materials, it is not a frank communication, and the public body must disclose the document to the requesting party unless it has asserted an alternate, valid basis for nondisclosure.
*476 In this case, the circuit court concluded that the Doyle letter was a frank communication.[25] It found that defendant carried its burden of proving (1) that the Doyle letter was of an advisory nature and covered other than purely factual materials, (2) the communication was made between officials and employees of public bodies, and (3) the communication was preliminary to a final agency determination.
The circuit court then moved to the balancing test and concluded that the balance of interests favored nondisclosure. The court offered four reasons to support the balance it struck. Its third and fourth reasons specifically address the balance of interests favoring nondisclosure of the Doyle letter:
(1) The letter contains substantially more opinion than fact, and the factual material is not easily severable from the overwhelming majority of the contents: Doyle’s views concerning the President’s involvement with the University House project.
(2) The letter is preliminary to a final determination of policy or action. The communication was between officials of public bodies. The letter concerns Defendant’s investigation and ultimate determination of what action, if any, would be taken regarding the University House controversy.
(3) The public interest in encouraging frank communications within the public body or between public bodies clearly outweighs the public interest in disclosure. Plaintiffs specific need for the letter, apparently to “shed light on the reasons why a highly respected public official resigned in the wake of EMU being caught misleading the public as to the true cost of the President’s house”, or the public’s general interest in disclosure, is outweighed by *477 Defendant’s interest in maintaining the quality of its deliberative and decision-making process.
(4) Defendant conducted an investigation and recently published a “voluminous and exhaustive report” concerning its findings regarding the University House project, a copy of which was furnished to Plaintiff.
The circuit court identified the two competing interests. On one hand, plaintiff had an interest in obtaining the letter to “shed light” on President Kirkpatrick’s involvement in the University House project. On the other hand, defendant needed to preserve its “deliberative and decision-making process” to carry out an effective internal investigation. The circuit court found that defendant had published and distributed to plaintiff a “voluminous and exhaustive report” of financial data related to the controversy. Defendant hired Deloitte & Touche to audit the expenditures related to the University House project and disseminated this audit to plaintiffs about the time plaintiffs filed suit to obtain the Doyle letter. In the circuit court’s judgment, the wave of data related to the University House project flowing from this independent report lessened plaintiffs interest in disclosure of the Doyle letter and tipped the balance in defendant’s favor such that the public interest in encouraging frank communication clearly outweighed the public interest in disclosure.
IV THE CIRCUIT COURT DID NOT ABUSE ITS DISCRETION
Reiterating what we said in Federated, we note that the trial court must determine whether defendant met its burden of proof that a public record is exempt. In this case, the circuit court found that defendant met its burden of showing that the public interest in encouraging frank communication clearly outweighed the interest of disclosure in “the particular instance.” On appeal *478 we are to evaluate that conclusion for an abuse of discretion to determine if that decision falls outside the principled range of outcomes.
Plaintiff claims that two “outcome determinative” facts tip the balance of interests decisively in favor of disclosure and should compel this Court to find the circuit court committed clear error. First, bringing to public light any criticism supposedly leveled by Doyle against President Fitzgerald in the letter would foster accountability and facilitate good government, which plaintiff contends is the core purpose of the FOIA. Second, Doyle wrote the letter in view of his impending departure, so in this “particular instance” defendant has a relatively weak interest in encouraging frank communication. According to plaintiff, because the balancing test is already tilted in favor of disclosure, it is inconceivable that the circuit court’s decision to withhold the Doyle letter did not amount to error requiring reversal.
Reviewing the circuit court’s decision for an abuse of discretion rather than clear error, we reject, first, plaintiff s blanket assertion that every frank communication that criticizes a public official must be disclosed to assure good governance and accountability and accomplish the “core purpose” of the FOIA. That a frank communication contains criticism of a public official or a public body, which is unremarkable considering that these are frank communications, certainly factors into the balancing test, but it cannot singularly serve to outweigh the public interest in nondisclosure. Were we to adopt such a rule, we would eviscerate the frank communication exemption. We doubt that officials within a public body would offer candid, written feedback, or that they would do so for very long, if that feedback would invariably find its way into the public *479 sphere. If the frank communication exemption can never protect a candid communication, which almost assuredly contains unfiltered criticism of policies and people, then we will have rendered this FOIA exemption a nullity. We agree with the Court of Appeals majority that defendant “need[s] more than cold and dry data to do its job, it need[s] the unvarnished candid opinion of insiders to make policy judgments and, particularly, to conduct sensitive investigations of top administrators” and to conclude otherwise would “sound the death knell of this vital tool for board members to discharge their oversight roles for the benefit of the public.”[26]
As for plaintiffs second “outcome determinative” consideration, we are not persuaded that Doyle’s retirement marginalized the public interest in encouraging frank communication within the public body. In plaintiffs view, Doyle’s retirement diminished the public interest in nondisclosure because, with Doyle departing, he would suffer no employment-related retribution by disclosing his honest feedback. By emphasizing this fact, plaintiff erroneously conflates the interests of the disclosing person, one member of the public body, with the public body’s need, as an institution, to encourage frank communication in this “particular instance.”
Quite simply, Doyle’s resignation does not negate defendant’s need to investigate thoroughly this controversy and future controversies. That one out-going member of defendant’s administration might not be inhibited by the possibility of disclosure does not allay the concern that every other member of defendant’s administration may harbor if Doyle’s communications, and possibly theirs, are disclosed for public consumption. This Court has recognized, in a related FOIA *480 context, that internal investigations are perilous precisely because employees are frequently afraid to make candid disclosures:
“1. Internal investigations are inherently difficult because employees are reluctant to give statements about the actions of fellow employees.
“2. If their statements would be a matter of public knowledge they might refuse to give any statements at all or be less than totally forthcoming and candid.
“3. Also, disclosure could be detrimental to some employees.
“4. Public disclosure of records relating to internal investigations into possible employee misconduct would destroy or severely diminish the Sheriff Department’s ability to effectively conduct such investigations.”[27]
Defendant was investigating the possible misconduct of the most senior member of management, President Kirkpatrick, and, in doing so, sought Doyle’s candid observations regarding the matter. Disclosure of Doyle’s letter would foster a fear among university officials that they could no longer communicate candidly about a sensitive topic without their written communications being disclosed to the public. This would create a chilling effect that would surely dry up future frank communications. Thus, the departure of Doyle has very little bearing on the institutional interests protected by the frank communication exemption.
Plaintiff would transform the weighted balancing test of the frank communication exemption into an irrebuttable presumption of disclosure. We decline to adopt plaintiffs position. The plain language of the balancing test requires the public interest in encourag *481 ing frank communication to clearly outweigh the public interest in disclosure, but it does not tacitly create an insurmountable obstacle to the public body’s seeking to withhold a frank communication from disclosure. The circuit court in this case acknowledged that the frank communication exemption required a weighted balancing test. Therefore, we cannot conclude that it misapprehended the weighted balancing test when it exempted the Doyle letter from disclosure.
We do not minimize the general public interest in the disclosure of frank communications. The Legislature explicitly codified within the frank communication exemption its policy determination that a frank communication must be disclosed to the public unless the public interest in disclosure is clearly outweighed. Moreover, the public has a keen interest in receiving information regarding the alleged misuse of public funds, which, if such misuse were true, might undermine the public’s trust and confidence in the public body. If public resources are squandered under their watch, then it calls into question whether members of the public body are fit to discharge the responsibilities that have been committed to them on behalf of the general public.
However, we do not hypothesize generally whether the public interest in disclosure should prevail over the public interest in nondisclosure. We only consider the balance struck by the circuit court in the context of this “particular instance.” The circuit court reviewed the evidence and made appropriate findings of fact pertaining to the Doyle letter. It found that defendant had released a “voluminous and exhaustive report” that tipped the balance in favor of nondisclosure because the Deloitte audit disclosed for the public record pertinent financial data related to the University House project. *482 Without question, the circuit court’s decision is controversial. But a circuit court is permitted to reach a controversial conclusion with which reasonable people and reasonable appellate courts may disagree without abusing its discretion and reaching a result outside the principled range of outcomes. Members of this Court, members of the Court of Appeals, or another circuit judge might have resolved this balance of interests differently, but the circuit court did not abuse its discretion.
V SEPARATION OF EXEMPT AND NONEXEMPT MATERIAL
For the foregoing reasons, we affirm the circuit court’s conclusion that the Doyle letter is exempt as a frank communication. However, pursuant to MCL 15.244, we hold that the exempt and nonexempt material within the Doyle letter must be separated and the latter disclosed to plaintiff.
The FOIA requires that
[i]f a public record contains material which is not exempt under section 13, as well as material which is exempt from disclosure under section 13, the public body shall separate the exempt and nonexempt material and make the nonexempt material available for examination and copying.[28]
The public body is assigned the responsibility, “to the extent practicable, [to] facilitate a separation of exempt from nonexempt information.”[29] This provision applies without exception to every public record. Accordingly, we remand this matter to the circuit court with the direction that it separate the opinion from the purely factual material and disclose the latter to plaintiff.
*483 VI. CONCLUSION
The circuit court did not abuse its discretion by determining that the public interest in frank communication clearly outweighed the public interest in disclosure. In this “particular instance,” defendant had a strong interest in preserving candid internal investigatory communications. Although Doyle may have retired soon after writing the letter, defendant maintained its interest in preventing a ripple effect of chilled communications during this or subsequent investigations. The public interest in disclosure is favored initially in the weighted balancing test. However, the circuit court found that defendant’s release of financial data mitigated that interest. As such, we cannot conclude that the circuit court abused its discretion. Accordingly, we affirm the grant of summary disposition in favor of defendant and remand this matter to the circuit court to separate the exempt and nonexempt information in the Doyle letter, to the extent practicable, and make the nonexempt material available to plaintiff.
TAYLOR, C.J., and CORRIGAN and MARKMAN, JJ., concurred with Young, J.

 467 Mich 98; 649 NW2d 383 (2002).

 City of Novi v Robert Adell Children’s Funded Trust, 473 Mich 242, 254; 701 NW2d 144 (2005), quoting People v Babcock, 469 Mich 247, 269; 666 NW2d 231 (2003) (“Discretion is abused when the decision results in ‘an outcome falling outside this principled range of outcomes.’ ”).

 Const 1963, art 8, § 6.

 MCL 390.553.

 In the September 10, 2003, FOIA request, plaintiff sought two categories of correspondence:
*469 1. Copies of all correspondence, including but not limited to letters, reports, memos and e-mails, to and from the following parties since Jan. 1, 2002, regarding the new University House on campus:
• Vice President for Business and Finance Patrick Doyle or other staff members of the Office of Business and Finance.
• The EMU Board of Regents.
• EMU President Samuel Kirkpatrick.
2. Copies of all correspondence, including but not limited to letters, reports, memos and e-mails, between Vice President for Business and Finance Patrick Doyle to and from the EMU Board of Regents, EMU President Samuel Kirkpatrick and/or the Office of Human Resources, regarding Doyle’s recent resignation and-or retirement.
In the September 11, 2003, FOIA request, plaintiff sought all (1) budgets, (2) bank accounts, (3) invoices, (4) change orders, (5) bids, (6) funding sources, (7) board of regents resolutions, (8) and fees, salary, or other income paid to Pamela Kirkpatrick, wife of EMU President Samuel Kirkpatrick, related to the University House project.

 265 Mich App 185; 693 NW2d 850 (2005).

 472 Mich 928 (2005). The parties were instructed to brief: (1) whether the Court of Appeals correctly applied the appropriate standard of review; (2) whether the Washtenaw Circuit Court clearly erred in applying the § 13(l)(m) FOIA exemption, MCL 15.243(l)(m), to the public record in question; and (3) whether purely factual materials, if any, contained within the public record were properly included within the scope of the exemption.

 Federated, supra at 101.

 State Farm Fire & Cas Co v Old Republic Ins Co, 466 Mich 142, 146; 644 NW2d 715 (2002).

 For example, in addition to the weighted balancing test in the frank communication exemption, the Legislature codified FOIA balancing tests at MCL 15.243(l)(c), (k), (n), (s), and (y).

 Federated, supra at 101.

 Id. at 107.

 We disagree with Justice Cavanagh’s argument that the abuse of discretion standard is inappropriate because the plaintiff has not and cannot view the contents of the withheld document. Although the plaintiff does not know the factual content of a requested document, such is the nature of litigation under the FOIA. This asymmetry does not reveal a defect in the abuse of discretion standard of review.
Justice Cavanagh does not disagree that, under Michigan’s traditional jurisprudence, discretionary determinations are reviewed for abuse of discretion, and he does not answer how, under the clear error standard, the plaintiff could better challenge facts of which it is unaware. Consistent with our law, it is more appropriate for appellate courts to consider whether the trial court abused its discretion when it makes a discretionary determination in light of the constellation of known facts that form the “particular instance.” Both parties concede that the Doyle letter contains Doyle’s written impressions about the University House project, and hence its legal status as a “frank communication,” and that the audit released a flood of financial information also pertaining to the project. It is the importance of the former in light of the latter that is disputed by the parties. Resolving this dispute in the context of the statutory weighted balancing test requires the trial court to make a judgment call. Therefore, we review that judgment call for an abuse of discretion.

 See, e.g., Federated, supra at 106; In re Miller, 433 Mich 331, 337; 445 NW2d 161 (1989); MCR 2.613(C).

 See, e.g., Babcock, supra at 265, 268-270; People v Jendrzejewski, 455 Mich 495, 500; 566 NW2d 530 (1997); Frank W Lynch & Co v Flex Technologies, Inc, 463 Mich 578, 583; 624 NW2d 180 (2001).

 Cf. Babcock, supra at 265 (“whether a factor exists [fact question] is reviewed for clear error ... whether a reason is substantial and compelling [discretionary determination] is reviewed for abuse of discretion”) (emphasis added).

 MCL 15.231(2) (“It is the public policy of this state that all persons, except those persons incarcerated in state or local correctional facilities, are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process.”).

 See MCL 15.243.

 Federated, supra at 110.

 MCL 15.243(l)(m) (emphasis added).

 Michigan is not alone in valuing and protecting frank communication. As aptly noted by the Court of Appeals majority, other state legislatures and the United States Congress have recognized that a public agency’s sensitive, internal deliberations must be granted some level of protection from public disclosure to promote the quality of those deliberations and to ensure overall good governance by the public agency. See, e.g., 5 USC 552(b)(5); Cal Gov’t Code 6254(a); Colo Rev Stat 24-72-204(2)(a)(XIII); Conn Gen Stat l-210(b)(l); Hawaii Rev Stat 92F-13(3); Ind Code 5-14-3-4(b)(6); Ky Rev Stat Ann 61.878(l)(j); Wash Rev Code 42.17.310(1)6); W Va Code 29B-l-4(a)(8); Wyo Stat Ann 16-4-203(b)(v).

 Cf. Federated, supra at 110, interpreting “in the particular instance” in a different FOIA context.

 If the public body denies the requesting party access to a public record, and the requesting party commences an action in the trial court, “the burden is on the public body to sustain its denial.” MCL 15.240(4) (emphasis added).

 See Herald Co, Inc v Ann Arbor Public Schools, 224 Mich App 266, 274; 568 NW2d 411 (1997), citing Milford v Gilb, 148 Mich App 778, 782; 384 NW2d 786 (1985).

 Plaintiff concedes that the Doyle letter is a frank communication. It challenges only the application of the weighted balancing test.

 Herald Co, 265 Mich App 202-203, 205.

 Kent Co Deputy Sheriffs Ass’n v Kent Co Sheriff, 463 Mich 353, 365-366; 616 NW2d 677 (2000) (citation omitted).

 MCL 15.244(1).

 MCL 15.244(2).