# STATE OF MICHIGAN

# COURT OF APPEALS

MARC EDWARDS,

       Plaintiff-Appellant,

v

OAKLAND TOWNSHIP, and OAKLAND
TOWNSHIP TRUSTEE BOARD,

       Defendants-Appellees.

UNPUBLISHED
March 19, 2015

No. 320133
Oakland Circuit Court
LC No. 2013-135134-CZ

Before: MARKEY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's January 17, 2014, opinion and order denying plaintiff's motion for summary disposition under MCR 2.116(C)(10) and granting defendants summary disposition under MCR 2.116(I)(2) regarding plaintiff's claims that defendants violated Michigan's Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, and the Open Meetings Act (OMA), MCL 15.261 *et seq.* We affirm.

## I. PERTINENT FACTS AND PROCEEDINGS

This case arises out of political turmoil in Oakland Township involving two issues: (1) the removal in 2011 of a dam that directed water to operate a cider mill at historic township property known as Paint Creek Cider Mill and (2) the approval by the township board of a request to rezone certain property to permit a controversial real estate development known as Blossom Ridge. The township board is comprised of seven members: a supervisor, a clerk, a treasurer, and four trustees. During the election cycle of 2012, five of seven board members were replaced. Plaintiff Marc Edwards, a twenty-two year veteran trustee, was among those the voters removed from office. The new board of trustees assumed office on November 20, 2012. The prior board's rezoning action was ultimately annulled by a referendum petition and citizen vote in August, 2013. [1]

One issue facing the newly elected township board was whether to renew a lease of space at the Cider Mill to a concessionaire, Paint Creek Cider Mill (PCCM), LLC, which would expire May

---

[1] See <http://www.theoaklandpress.com/general-news/20130806/oakland-township-voters-reject-blossom-ridge-senior-development> accessed February 16, 2015.

31, 2013. At its meeting of December 11, 2012, the board of trustees rejected a request to extend the lease/concession agreement for two years. Also, the board, by unanimous vote, adopted the following resolution to create a three-member subcommittee to study use of the cider mill property: "Moved by Keyes, seconded by Reilly, to appoint Treasurer Langlois, Trustee Bailey and Trustee McKay to a subcommittee for the purpose of studying the Paint Creek Cider Mill and its future use relative to the request to extend the Concessionaire Agreement." The meetings of this subcommittee in the months following its creation are the subject of plaintiff's OMA complaint. In proceedings in the trial court on the parties' motions for summary disposition, all three subcommittee members and the township supervisor submitted affidavits. All four of the affidavits averred that after the subcommittee was created, "over the next several months, the three subcommittee members collected data and discussed the future use of the Paint Creek Cider Mill relative to the Concessionaire Agreement. At no time did the subcommittee have authority to reach any decision regarding the Concessionaire Agreement." Each affidavit also stated:

> 9. At no time did four members or a quorum of the Board of Trustees meet outside of an open and public meeting to deliberate or discuss any action regarding the Concessionaire Agreement.

> 10. At no time did four members or a quorum of the Board of Trustees outside of an open public meeting deliberate or decide the duration of the Concessionaire Agreement.

All four affiants further averred that the issue of the concessionaire agreement was discussed at the board's regularly scheduled open meeting of April 9, 2013, and ultimately the matter was decided at an open special meeting of the board on April 15, 2013.

The board's April 15, 2013, resolution approving the existing concessionaire's proposal provides in pertinent part: "Moved by Bailey, seconded by Langlois to direct the Township Manager [James Creech] and the Township attorney to negotiate a new Concessionaire Agreement with PCCM, LLC, Mr. Grange, based upon the terms and conditions outlined in his proposal as well as the expiring Concessionaire Agreement . . . ." On April 18, 2013, Trustee Bailey sent an email to Creech that discussed the duration of the lease agreement, "Terry Gonser [the township supervisor] and the committee agree that the new contract should have an 18 month duration not 2 years." Five hours later, Bailey sent a follow-up email to Creech that read: "I wish to retract the last sentence in the first paragraph of my email below because this is not something that the committee has discussed. It is only my recommendation that the wording of the lease agreement be set up to be 18 months not 2 years." Bailey also addressed the April 18 email in his affidavit, stating:

> 11. My April 18, 2013, email to Trustees was an assumption and was not intended to indicate, nor did it occur, that four members or quorum of the Board of Trustees met, deliberated or otherwise violated the Open Meetings Act. Rather, the email was solely my recommendation to Manager Creech and not a result of four members or a quorum of the Board of Trustees deliberating and/or agreeing outside of an open meeting.

Ultimately, the township entered a new concessionaire agreement with PCCM covering 18 months: June 1, 2013 through December 31, 2014.

Plaintiff submitted his FOIA request by letter dated April 10, 2013, directed to the township's FOIA coordinator. The letter requested, pursuant to FOIA, "copies of all electronic communications, emails or text messages sent by or to members of the Board of Trustees for the Charter Township of Oakland, which in any way relate to matters of business or action taken or considered by the Board of Trustees since November 20, 2012." The letter also stated:

> . . . The subject matter of this request should be broadly interpreted and covers any communications with members of the Board of Trustees, including issues that were or may be matters considered during closed sessions permitted under the Open Meetings Act. . . . This request includes any writing, as defined by MCL 15.232(h) whether maintained in paper or electronic format. Writings responsive to this request include, but are not limited to, communications between members of the Board of Trustees and any of the following:
>
> A.   Other members of the Board of Trustees;
>
> B.   Any staff members at the Charter Township of Oakland;
>
> C.   Members of the Planning Commission;
>
> D.   Members of the public;
>
> E.   Any individual having business before or having issues or matters considered by the Charter Township of Oakland;
>
> F.   Communications with any consultants or attorneys.
>
> Each string or response to an email or text message shall be included, along with the identification of each and every individual who received a copy or blind copy of the writing. It is preferred that these writings be produced in electronic form if possible. . . .
>
> This request encompasses writings sent from Township email accounts as well as private email accounts of members of the Board of Trustees used to communicate regarding Township business or affairs [April 10, 2013, letter.]

The township responded to this request by letter dated May 1, 2013, from the executive assistant to the township manager. It noted that in response to plaintiff's April 10 FOIA-request letter, plaintiff could pick up 8,918 pages of documents at the township office during regular business hours and that the charge for the material was $1,583.50. Apparently, this fee represented "the actual incremental cost of duplication or publication including labor, the cost of search, examination, review, and the deletion and separation of exempt from nonexempt information . . . ." MCL 15.234(1). The letter described the fee as being comprised of 9.5 hours labor at $15.75 an hour, 4.5 hours labor at $23.32 an hour, $0.25 for each page copied ($2,229.50), less plaintiff's deposit of $781.90 and a 5% discount.

The township's May 1, 2013, letter also described certain documents the township withheld. The township withheld 263 pages pertaining to four different attorneys or law firms on the basis of attorney-client privilege, MCL 15.243(1)(g). The township also withheld 117 pages based on various exemptions, including "frank communications," MCL 15.243(1)(m). These materials were categorized as discussions involving union negotiations (80 pages), the Blossom Ridge development (22 pages), the Parks & Recreation Commission (5 pages), DEQ permitting (1 page), closed session minutes (3 pages), and policy (Gap) analysis (6 pages). Plaintiff's attorney asserted an appeal of the township's response to the FOIA request in a May 7, 2013 letter to township supervisor Gonser. The letter claimed that the township's response was deficient for not having provided electronic copies of the documents, for failing to sufficiently describe the exempted material, and for failing to advise plaintiff of his right to appeal. But the letter only sought production of 32 pages of the material claimed to be exempt: 22 pages regarding Blossom Ridge, 5 pages regarding the Parks & Recreation Commission, 1 page regarding DEQ permitting, and 6 pages involving policy (Gap) analysis.

As the result of a special township board meeting held on May 20, 2013, the township decided to release copies of 20 of the 34 documents it had previously withheld. The released documents included 10 pages regarding Blossom Ridge, 3 pages regarding the Parks & Recreation Commission, and all documents regarding DEQ permitting and policy (Gap) analysis. In a six-page letter of May 22, 2013 to plaintiff's attorney, the township's attorney described the exempted documents, as well as the basis for asserting the frank communications exemption, and provided copies of the released documents. Three additional documents were released with partial redactions of an identical paragraph in each document that was claimed exempt on the basis of frank communications under MCL 15.243(1)(m) "and/or confidential attorney client privilege as incorporated if MCL 15.243(1)(g)." Regarding the "frank communications" exemption as to the withheld documents, the township asserted "that each email involved an Advisory Communication between public officials, involved matters other than purely factual, and involved a discussion preliminary to a final determination of policy or action." Further, the letter stated the township applied the balancing test of MCL 15.243(1)(m), and that "the public's interest in disclosure was outweighed by a valid public interest for officials of a public body to communicate candidly when considering an issue that is preliminary to a final policy or action."

On July 17, 2013, plaintiff filed his complaint asserting that defendants violated the FOIA, MCL 15.231 *et seq.*, and the OMA, MCL 15.261 *et seq.* The complaint asserted that the circuit court had jurisdiction of the OMA claim under MCL 15.271, and the FOIA claim under MCL 15.240(1).[2] In his OMA claim, plaintiff asserted the township board subcommittee,

---

[2] MCL 15.240(1) provides:

(1) If a public body makes a final determination to deny all or a portion of a request, the requesting person may do 1 of the following at his or her option:

(a) Submit to the head of the public body a written appeal that specifically states the word "appeal" and identifies the reason or reasons for reversal of the denial.

created on December 11, 2012, "was empowered to select the winning proposal for the Cider Mill is a public body and thus is subject to the requirements of the OMA." The complaint also asserted that various email exchanges and other communication among the subcommittee members were "deliberations" not conducted at an open meeting as required by the OMA. Although noting the OMA permits "a civil action to compel compliance or to enjoin further noncompliance with this act," MCL 15.271(1), the only relief plaintiff requested was a declaration that the township trustees had violated the OMA, attorney fees under MCL 15.271(4), and "such other and further relief as [the trial court] deems just and equitable."

With respect to his FOIA complaint, plaintiff alleged that the material the township withheld did not come within the frank communication exemption, MCL 15.243(1)(m), that paper copies of the requested email were not "the most economical means available for making copies of public records," MCL 15.234(3), and, that by providing paper rather than electronic copies, defendants did not provide the requested public records, MCL 15.233(1). Again, with respect to his FOIA claim, plaintiff only requested declaratory relief, attorney fees and costs, MCL 15.240(6), and "such other and further relief as [the trial court] deems just and equitable."

The parties' motions for summary disposition first came before the trial court for hearing on November 13, 2013. Defendant's attorney announced that the township was willing to provide the withheld and redacted documents to plaintiff's counsel under a protective order. The record suggests the possibility of settlement once plaintiff's counsel reviewed the material.

At the next motion hearing on January 8, 2014, plaintiff's counsel acknowledged that the attorneys had spent many hours attempting to resolve the case. Plaintiff's counsel argued that plaintiff should have been provided electronic copies of the email and that the fee the township charged was unjustified. Plaintiff's counsel also stated he had reviewed the withheld material under a protective order, and "there are no smoking guns . . . that would preclude disclosure." Counsel also denied that plaintiff's complaint was "an act of political retribution . . . ."

Defense counsel argued that there "does appear to be a lot of politics involved here." Counsel also argued that plaintiff's FOIA request was a "gunshot approach" with no specific subject, and the township went to great lengths to comply with the request; the township could not just push a button to generate an electronic copy of the requested email. On this basis, defense counsel argued, the case law on which plaintiff relied was distinguishable. Furthermore, defense counsel noted, the request in this case covered both exempt and nonexempt material necessitating review by counsel of the email that could only be accomplished by printing them. Defense counsel also argued that the township did not possess 90% of the documents produced, and all of the withheld documents in electronic format because they resided on the personal or business computers or networks of the individual township officials. Counsel further noted that

---

(b) Commence an action in the circuit court to compel the public body's disclosure of the public records within 180 days after a public body's final determination to deny a request.

Because plaintiff chose the option provided in subsection (1)(a), we question, but do not decide, whether plaintiff properly invoked subsection (1)(b) with respect to his FOIA complaint.

most of documents withheld under the frank communications exemption dealt with the Blossom Ridge development. But that issue, counsel observed, was no longer pending. On December 10, 2013, the township had denied the developer's request to approve a special accommodation use. Consequently, counsel argued, if the FOIA request for the Blossom Ridge documents had been filed after the December 10 board action, it would have been granted. But failing settlement, the trial court had to review the documents to determine if the claimed exemptions were properly invoked at the time the FOIA request was denied.

Defense counsel also argued plaintiff's action was not timely. First, plaintiff did not allege an intentional violation of the OMA by an individual official, so the 180-day limitation period of MCL 15.273(2) did not apply. Further, defense counsel argued, plaintiff filed his OMA complaint outside the 30- or 60-day limitations period of MCL 15.270(3). Finally, defense counsel argued that the OMA complaint was without merit because as long as a subcommittee of a governmental body is advisory only, the OMA does not apply. The subcommittee at issue was advisory only and all actions regarding the concessionaire agreement were deliberated on and decided by the township board at meetings held in compliance with the OMA. Counsel pointed out that board member Bailey's comments in an April 18 email that suggested that there might have been action by a quorum of the board not at an open meeting, were corrected by Bailey in an email sent hours later on the same day. Bailey's affidavit also confirmed no quorum of the board had met outside the requirements of the OMA and that his email of April 18 was poorly drafted and intended to express only his own position.

Plaintiff's counsel responded that defendants' affidavits were not timely filed. Plaintiff's counsel also suggested that with respect to electronic copies, an information technology consultant could copy the hard drives of all the pertinent officials' computers and then define search parameters to retrieve all email in electronic format. Counsel also argued that electronic copies of the email were necessary because the printed versions might have altered content.

After the parties' arguments, the trial court observed that it might take a while to review everything submitted, which included copies of the withheld and redacted material. The court issued its opinion and order on January 17, 2014, denying plaintiff's motion for summary disposition under MCR 2.116(C)(10), and granting defendants summary disposition under MCR 2.116(I)(2). The trial court ruled as follows:

> The Court finds that there was no violation of the OMA because the Subcommittee was not subject to the Act. The evidence clearly shows that the subcommittee was merely advisory and only capable of making recommendations concerning the exercise of governmental authority. There is no evidence that there was deliberation and/or a final determination made by the Subcommittee. Defendant retained the authority to reject the Subcommittee's recommendations.

> As to the FOIA, the Court finds that the Frank Communications exception was properly asserted. The documents withheld are communications of an advisory nature made within a public body or between public bodies that cover other than purely factual material and are preliminary to a final agency determination of policy or action. Defendant properly weighed the interests when making its determination. The reasoning and rationale was fully set forth in the

written decision of May 22, 2013. The Court finds that Defendant has sustained the burden of proving that the public interest in disclosure is outweighed by the public interest in encouraging frank communication. With regard to the redacted documents, the Court finds that each of the redacted materials clearly fall within a statutory exception in that they involve the exempted discussion of legal opinions, unionization of employees, personnel matters and/or frank communications of a pending issue before the Board. The Court finds that Defendant properly invoked the attorney-client privilege on the withheld emails. The Court finds that Defendant did not violate FOIA by providing Plaintiff the documents in paper format. Plaintiff has failed to produce any evidence that his "preferred" method of receiving documents in electronic form was possible. Because the emails had to be reviewed and Defendant does not have the capability to redact documents in electronic format, producing them in that format was not feasible. The Court finds that Defendant has shown that the manner in which the copies were provided to Plaintiff was the most economical. Finally, the Court finds that Plaintiff is not entitled to an award of attorney fees for any technical violations of FOIA because if there were violations they did not impact Plaintiff's ability to receive the disputed records and Defendant made a good-faith effort to respond to Plaintiff's request.

Plaintiff appeals by right the trial court's January 17, 2014, opinion and order.

## II. STANDARD OF REVIEW

We review the trial court's grant or denial of summary disposition de novo. *Herald Co v Bay City*, 463 Mich 111, 117; 614 NW2d 873 (2000). "Summary disposition under MCR 2.116(C)(10) is appropriate only when the moving party can demonstrate there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Hopkins v Duncan Twp*, 294 Mich App 401, 408; 812 NW2d 27 (2011). The moving party must specifically identify the matters that are not factually disputed and has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. MCR 2.116(G)(3)(b); *Coblentz v Novi*, 475 Mich 558, 569; 719 NW2d 73 (2006). The party opposing the motion then has the burden to show with evidentiary materials that a genuine issue of disputed fact exists, MCR 2.116(G)(4), or agree that there are no disputed material facts and it, rather than the moving party, is entitled to judgment as a matter of law. MCR 2.116(I)(2); *AFP Specialties, Inc v Vereyken*, 303 Mich App 497, 513; 844 NW2d 470 (2014).

When deciding the motions, the trial court must consider all substantively admissible evidence submitted by the parties in the light most favorable to the opposing party. MCR 2.116(G)(6); *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue on which reasonable minds could differ." *AFP Specialties*, 303 Mich App at 504 (citation omitted).

Whether the OMA applies is a question of law that is reviewed de novo. *In re Jude*, 228 Mich App 667, 670; 578 NW2d 704 (1998). This Court also reviews questions of statutory construction regarding the application of the OMA and FOIA de novo. *Herald Co*, 463 Mich at 117; *Davis v Detroit Fin Review Team*, 296 Mich App 568, 584; 821 NW2d 896 (2012). "It is

axiomatic that statutory language expresses legislative intent. . . . Where the statute unambiguously conveys the Legislature's intent, the proper role of a court is simply to apply the terms of the statute to the circumstances in a particular case." *King v Mich State Police Dep't*, 303 Mich App 162, 175; 841 NW2d 914 (2013) (citation omitted); see also *Herald Co*, 463 Mich at 117-118. When a statutory provision is ambiguous, this Court must effectuate the Legislature's intent through a reasonable construction, in light of the statute's purpose. *Davis*, 296 Mich App at 585.

Our review is for clear error to the extent a party challenges on appeal the trial court's factual determinations that support its decision. *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 472; 719 NW2d 19 (2005). We must defer to the trial court's factual determinations unless we are left with a definite and firm conviction that the trial court has made a mistake. *Id*. at 471-472; *King*, 303 Mich App at 174-175. Where FOIA requires the trial court to balance competing interests, such as the balancing test found in the frank communications exemption, MCL 15.243(1)(m), we review the trial court's decision for an abuse of discretion. *Herald Co*, 475 Mich at 470-472; *King*, 303 Mich App at 175. We cannot disturb the trial court's discretionary determination unless it falls outside the range of principled outcomes. *Herald Co*, 475 Mich at 472; *King*, 303 Mich App at 175.

## III. ANALYSIS

### A. PLAINTIFF'S OMA CLAIM

The trial court did not err by granting defendants summary disposition regarding plaintiff's OMA claim because plaintiff failed to present any evidence to substantiate his claim that the subcommittee formed to study the Paint Creek Cider Mill and its future use with respect to a concessionaire agreement was anything other than a purely advisory group. Because the subcommittee in this instance was not a "legislative or governing body," nor "empowered by . . . charter, ordinance, resolution, or rule to exercise governmental or proprietary authority or perform a governmental or proprietary function," MCL 15.262(a), it was not a "public body" as defined by the OMA. See *Davis*, 296 Mich App at 584-608. Plaintiff misplaces reliance on *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211; 507 NW2d 422 (1993) and *Morrison v East Lansing*, 255 Mich App 505; 660 NW2d 395 (2003), overruled in part on other grounds *Speicher v Columbia Twp Trustees Bd*, ___ Mich ___; ___ NW2d ___ (Docket No. 148617, Dec 22, 2014). Both *Booth* and *Morrison* are distinguishable because the public body in each case delegated its governmental or proprietary authority to a sub-quorum group. See *Booth Newspapers*, 444 Mich at 225-226; *Morrison*, 255 Mich App at 520. Consequently, the trial court correctly ruled that the "subcommittee was merely advisory and only capable of making recommendations concerning the exercise of governmental authority," and therefore, not subject to OMA requirements.

In general, the OMA, MCL 15.261 *et seq.*, requires that all meetings of a "public body" at which a quorum is present to deliberate toward or render a "decision" by which the public body effectuates or formulates public policy must be open to the public. MCL 15.262; MCL 15.263; *Davis*, 296 Mich App at 576. "[T]he purpose of the OMA is to promote governmental accountability by facilitating public access to official decision making and to provide a means through which the general public may better understand issues and decisions of public concern."

*Kitchen v Ferndale City Council*, 253 Mich App 115, 125; 654 NW2d 918 (2002), overruled in part on other grounds *Speicher*, ___ Mich at ___. In determining whether the OMA applies, the threshold query is whether an entity is a "public body" as defined by the act. *Herald Co*, 463 Mich at 129. The OMA provides a multifaceted definition of "public body" as follows:

> "Public body" means any state or local *legislative or governing body*, including a board, commission, committee, subcommittee, authority, or council, that is *empowered* by state constitution, statute, charter, ordinance, resolution, or rule *to exercise governmental or proprietary authority* or *perform a governmental or proprietary function*; a lessee of such a body performing an essential public purpose and function pursuant to the lease agreement; or the board of a nonprofit corporation formed by a city under section 4o of the home rule city act, 1909 PA 279, MCL 117.4o. [MCL 15.262(a) (emphasis added).]

First, a "public body" must be a state or local "legislative or governing body." *Id*.; *Herald Co*, 463 Mich at 129; *Davis*, 296 Mich App at 591. This Court in *Davis* explored the meaning of the terms "legislative body" and "governing body" as used in the OMA. In reviewing these undefined terms, the Court noted it must use their "common and approved usage" and plain meaning and could consult dictionary definitions for this purpose. *Id*. at 592-594. After consulting several dictionary definitions the Court determined a "legislative body" is an entity that possessed "the power to make or enact law, to bring something into or out of existence by making law, or to attempt to bring about or control by legislation." *Id*. at 593. Plaintiff points to no evidence that would support a finding that the subcommittee in this case had the power to make or enact law, or that the township delegated any of its legislative authority to the subcommittee. At best, the subcommittee could make recommendations to the full board, but could not act independently to make or adopt legislation. *Id*. at 603-604 (holding that "a recommendation for action by *another* entity, group, or individual, by its very nature, cannot constitute 'governing' ")(emphasis in the original). Consequently, the subcommittee in this case was not a "legislative body" under the OMA.

With respect to the meaning of "governing body," the *Davis* Court looked to both dictionary definitions and other statutory definitions. *Id*. at 593-594. As to the latter, the Legislature has elsewhere defined the term to mean "a body that has some specific authority over a political subdivision: a board of commissioners for a county, a city or village council, a township board, a body with legislative powers, or any body that has general governing or policymaking authority over a political subdivision." *Id*. at 594 (citations omitted). Furthermore, as required by MCL 15.262(a), a "governing body" must be empowered to "exercise governmental or proprietary authority or perform a governmental or proprietary function[.]" *Id*.; *Davis*, 296 Mich App at 594. The focus of the inquiry is the authority that has been delegated to an entity, not the authority the entity actually exercised. *Id*. Thus, a "governing body" is one that is self-governing and independent; that is, an entity that makes or administers public policy for a political unit or exercises independent authority. *Id*. at 597. A "governing body' must also have the power to make "decisions," defined in the OMA as "a determination, action, vote, or disposition upon a motion, proposal, recommendation, resolution, order, ordinance, bill or measure on which a vote by members of a public body is required and by which a public body effectuates or formulates public policy." MCL 15.262(d).

In this case, the subcommittee was not a "governing body" because it did not independently exercise, nor was it delegated any authority to "exercise governmental or proprietary authority or perform a governmental or proprietary function[.]" MCL 15.262(a); *Davis*, 296 Mich App at 584, 597. The subcommittee was not a "governing body" because it could not "exercise independent governmental or proprietary authority or . . . perform an independent governmental or proprietary function . . . either one of which results in independent decision-making that effectuates or formulates public policy." *Id*. at 584; MCL 15.262(a), (d).

The fact that the OMA's definition of "public body" lists "subcommittee" as a possible example of a "public body" is not dispositive of whether a subcommittee is actually a "legislative or governing body" under MCL 15.262(a). Because the subcommittee in this case was only empowered to make recommendations to the creating public body, the township board, it was, as discussed already, neither a "legislative body" nor a "governing body." Hence, the subcommittee was not a "public body" as defined in the OMA. *Davis*, 296 Mich App at 599, 601 n 98, 605-606, 608. Indeed, because the subcommittee possessed no independent governmental or proprietary authority, and there is no evidence that the township delegated any of its governmental or proprietary authority to the subcommittee, the cases of *Booth Newspapers*, 444 Mich 211, and *Morrison*, 255 Mich App 505, are clearly distinguishable. In *Booth*, "the University of Michigan Board of Regents attempted to evade the requirements of the Open Meetings Act." *Davis*, 296 Mich App at 588-589. The Board of Regents, as a body subject to the OMA, "effectively sought to delegate its authority . . . to various bodies of its own creation that it believed were not subject to the OMA, for the express purpose of avoiding the requirements of the OMA." *Herald Co*, 463 Mich at 134. The *Booth* decision "precluded an attempt by a public body to evade the OMA . . . by delegating its authority." *Id*. at 135. Similarly, in *Morrison*, "[t]he city council effectively authorized the [the subcommittee in that case] to perform a governmental function." *Morrison*, 255 Mich App at 520.

There is no evidence the township delegated any of its governmental or proprietary authority to the subcommittee, other than a speculative inference from a single email that was almost immediately retracted. Plaintiff has produced no evidence to counter the affidavits filed in this case by the pertinent officials that the subcommittee was not delegated any of the township board's governmental or proprietary authority. Plaintiff could not rest on allegations as the party opposing defendants' motion for summary disposition and had the burden of showing with evidentiary materials that a genuine issue of disputed material fact existed. MCR 2.116(G)(4); *Coblentz*, 475 Mich at 569. Plaintiff failed to do so.

Plaintiff also argues that the subcommittee was covered by the OMA even if it could only make recommendations with the final authority resting with the full board, as the definition of "decision" in MCL 15.262(d) includes "recommendation" and "[a]ll decisions of a public body shall be made at a meeting open to the public." MCL 15.263(2). Plaintiff's argument fails because he does not read the statutory provision as a whole. MCL 15.262(d) provides (emphasis added): " 'Decision' means a determination, action, vote, or disposition *upon* a motion, proposal, *recommendation*, resolution, order, ordinance, bill, or measure on which a vote by members of a *public body* is required and by which a *public body* effectuates or formulates public policy." For purposes of illustrating the fallacy of plaintiff's argument, this definition provides that a "recommendation" is a "decision" only when (1) members of a *public body*, (2) *vote or act upon*, (3) a recommendation, (4) to effectuate or formulate public policy. As discussed already, an

-10-

advisory subcommittee is neither a legislative nor a governing body; it cannot therefore be a "public body." MCL 15.262(a). Thus, a recommendation is not a "decision," but rather a "decision" occurs when the public body, the township board, acts or votes on the recommendation to effectuate or formulate public policy. See *Davis*, 296 Mich App at 600.

Because the subcommittee in this case was not a "legislative or governing body," or "empowered by . . . charter, ordinance, resolution, or rule to exercise governmental or proprietary authority or perform a governmental or proprietary function," MCL 15.262(a), it was not a "public body" under the OMA. Consequently, the subcommittee was not subject to the requirements of the OMA. Plaintiff has failed produce any evidence that the township board delegated any of its "governmental or proprietary authority" or "governmental or proprietary function" to the subcommittee or that the township board was purposefully attempting to evade the OMA. Consequently, the trial properly granted defendants summary disposition.

## B. PLAINTIFF'S FOIA CLAIM

Plaintiff presents four arguments that the trial court erred regarding his FOIA claim: (1) by accepting the township's invocation of the frank communications exemption; (2) by accepting the township's invocation of the exemption for attorney-client privilege; (3) by not ordering the township to provide electronic copies of the email it released; and (4) by not awarding plaintiff attorney fees under MCL 15.235(3) and MCL 15.240(6) because he obtained additional documents as a result of appealing the township's initial decision to the township board.[3]

We briefly address this last argument first. Again, we question plaintiff's right to proceed under MCL 15.240(1)(b) after having chosen to pursue his right to appeal to the township board under MCL 15.240(1)(a). Second, to obtain attorney fees under MCL 15.240(6), a party must prevail, at least in part. See also MCL 15.235(3) (providing that to assess damages under FOIA, the circuit must (a) determine the defendant has not complied with the act, and (b) have ordered disclosure, at least in part, of the public records sought). Third, a plain reading of MCL 15.240(6) limits an award of attorney fees to when a party has prevailed at least in part "in an action commenced under this section . . . ." With respect to the two options of MCL 15.240(1), only subsection (1)(b) refers to commencement of "an action in the circuit court . . . ." Consequently, based on the plain language of FOIA, attorney fees are not available with respect to an appeal of an agency decision under MCL 15.240(1)(a). Further, to justify an attorney fee award for an action commenced under MCL 15.240(1)(b), the party must prevail at least in part by obtaining disclosure of items sought. Plaintiff's claim for attorney fees is without merit.

We decline to separately address plaintiff's arguments regarding the attorney-client privilege exemption under MCL 15.243(g). Plaintiff chose not to appeal or bring a circuit court action regarding all documents that defendants specifically identified as exempt only under this exemption. Defendants released copies to plaintiff of 8,918 pages of email messages. Of the 34

---

[3] Plaintiff also asserts a claim to attorney fees regarding his OMA claim that is meritless. See *Speicher*, ___ Mich at ___, holding "a person cannot recover court costs and actual attorney fees under MCL 15.271(4) unless he or she succeeds in obtaining injunctive relief in the action."

pages of email messages defendants withheld that plaintiff contested, defendants released an additional 20 pages after plaintiff's appeal under MCL 15.240(1)(a). With respect to the 14 pages email messages at issue in this case, defendants primarily asserted the frank communications exemption under MCL 15.243(1)(m). Only a handful of the withheld or partial redacted email were also claimed to be exempt as frank communications about attorney-client privileged communications. Thus, if the trial court properly upheld the frank communication exemption, the issue of attorney client privilege need not be reached.

## 1. FRANK COMMUNICATIONS EXEMPTION

The freedom of information act announces the public policy of this state is that "all persons, except those persons incarcerated in state or local correctional facilities, are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees[.]" MCL 15.231(2). Consistent with this purpose, persons not incarcerated have a right to inspect, copy, or receive copies of requested public records that are sufficiently described to enable a public body to locate them unless specifically exempt under the act. MCL 15.232(e); MCL 15.233(1); *Hopkins*, 294 Mich App at 409. A "public body" under FOIA includes "[a] county, city, township, village, intercounty, intercity, or regional governing body, council, school district, special district, or municipal corporation, or a board, department, commission, council, or agency thereof." MCL 15.243(d)(*iii*).[4] A "public record" is a "*writing* prepared, owned, used, in the possession of, or retained by a *public body* in the *performance of an official function*, from the time it is created. Public record does not include computer software." MCL 15.232(e) (emphasis added).

> "Writing" means handwriting, typewriting, printing, photostating, photographing, photocopying, and every other means of recording, and includes letters, words, pictures, sounds, or symbols, or combinations thereof, and papers, maps, magnetic or paper tapes, photographic films or prints, microfilm, microfiche, magnetic or punched cards, discs, drums, or other means of recording or retaining meaningful content. [MCL 15.232(h).]

The FOIA definition of "writing" is broad enough to include electronic recording of meaningful content, including email. But for email to be a "public record" it must be (1) "prepared, owned, used, in the possession of, or retained," (2) "by a public body," (3) "in the performance of an official function." MCL 15.232(e). See *Howell Ed Assoc MEA/NEA v Howell Bd of Ed*, 287 Mich App 228, 235-237; 789 NW2d 495 (2010) (teachers' email residing or "captured" on "public body" school system's computers were not "public records" because the email, were not used or retained "in the performance of an official function"); *Hopkins*, 294 Mich App at 417 (individual notes of township trustee "on a governmental issue are only a public record when the notes are taken in furtherance of an official function"). Here, according

---

[4] The FOIA defines "public body" to encompass a "state officer" or "employee" "but does not include the governor or lieutenant governor, the executive office of the governor or lieutenant governor, or employees thereof." MCL 15.232(d)(*i*). Curiously, however, the definition of "public body" does not include township or other local government employees or officials.

to the argument in the trial court, 90% of the email messages disclosed and all of the email messages at issue in this case were not "prepared, owned, used, in the possession of, or retained by a public body," in this case, the township. Rather, the email at issue resided on the personal or business computers or networks of the individual township officials. Although, we question whether such email messages are public records, we nevertheless address the merits of plaintiff's appeal by assuming that that the email messages in this case are public records.

The FOIA exemption for "frank communication" provides in relevant part:

> Communications and notes within a public body or between public bodies of an advisory nature to the extent that they cover other than purely factual materials and are preliminary to a final agency determination of policy or action. This exemption does not apply unless the public body shows that in the particular instance the public interest in encouraging frank communication between officials and employees of public bodies clearly outweighs the public interest in disclosure. [MCL 15.243(1)(m).]

The public body bears the burden of establishing the applicability of the exemption. *Bukowski v Detroit*, 478 Mich 268, 274; 732 NW2d 75 (2007); see also MCL 15.240(4). A public body may withhold a public record as a "frank communication" if it "(1) is a communication or note of an advisory nature made within a public body or between public bodies, (2) covers other than purely factual material, and (3) is preliminary to a final agency determination of policy or action." *Herald Co*, 475 Mich at 475. If these conditions are satisfied, the public body must show that "in the particular instance," the public interest in encouraging frank communication "clearly outweighs" the public interest in disclosure of the records. MCL 15.243(1)(m); *Herald Co*, 475 Mich at 475-476, 480-481. Here, the circuit court heard the parties' arguments, received evidence submitted on motions for summary disposition, reviewed in camera the messages that were withheld or redacted, MCL 15.240(4), and ruled that defendants had satisfied their burden regarding this exemption.

Plaintiff first asserts that the township failed to adequately explain the public interest in asserting the frank communication exemption. This claim is without merit. The statute itself identifies that there is a public interest in frank communication among officials and employees of public bodies. "[T]he Legislature has made a policy determination that full disclosure of certain public records could prove harmful to the proper functioning of the public body." *Herald Co*, 475 Mich at 473. Both this Court and our Supreme Court have recognized that in particular instances the public interest is served when public officials have "more than cold and dry data" and are able to receive and give "unvarnished candid opinion[s]" to make sensitive policy judgments. *Id*. at 479 (citation omitted). Plaintiff also argues that certain exempted email strings contained purely factual matters but points to no evidence by which this Court could form a definite and firm conviction that the trial court made a mistake in determining otherwise from its review of the documents in camera. *Id*. at 472. Plaintiff argues that email related to the Parks & Recreation Board does not appear to be preliminary to a final agency determination of policy or action. Defendants assert the communications related to pending budget and millage issues. Again, we discern no basis to reach a definite and firm conviction that the trial court made a mistake in determining the frank communication exemption applied. *Id*. at 472.

Plaintiff's primary argument on appeal is that the trial court abused its discretion by finding that defendants satisfied the balancing test of § 13(1)(m). See *Herald Co*, 475 Mich at 472. Plaintiff argues that defendants asserted only conclusory statements to show that "the public interest in encouraging frank communication between officials and employees of public bodies *clearly outweighs* the public interest in disclosure." MCL 15.243(1)(m). As noted already, the statute itself recognizes a public interest in frank communications. And the circuit court must "remain cognizant of the special consideration that the Legislature has accorded an exemptible class of records." *Herald Co*, 475 Mich at 473 (citation omitted). Also, the FOIA clearly creates a presumption in favor of disclosure of public records unless the public body establishes than an exemption to disclosure applies. MCL 15.233(1); MCL 15.240(4); *King*, 303 Mich App at 176. But this presumption in favor of disclosure is not irrefutable or "an insurmountable obstacle to the public body's seeking to withhold a frank communication from disclosure." *Herald Co*, 475 Mich at 480-481. Moreover, the balancing test must be applied to the "particular instance" involved, and plaintiff has asserted no specific public interest in disclosure of the particular frank communications at issue. *Id*. at 474 ("the parties and the courts must consider how the unique circumstances of the 'particular instance' affect the public interest in disclosure versus the public interest in encouraging frank communication"). In light of the vast amounts of email messages defendants released, plaintiff's failure to assert a public interest in disclosure in this "particular instance," counsel for plaintiff conceding below that based on his review of the withheld material under a protective order that they contained "no smoking guns," we cannot conclude that the trial court abused its discretion. *Herald Co*, 475 Mich at 472, 481-482. Stated otherwise, the trial court's determination after its in camera review of the withheld material that defendants satisfied the balancing test of MCL 15.243(1)(m) was within the range of principled outcomes. *King*, 303 Mich App at 175.

## 2. PAPER COPIES

Plaintiff argues that the trial court erred by not ordering the township to provide the vast amount of email messages he requested in electronic format. His argument takes two prongs: (1) paper copies are not the actual electronic records he requested under MCL 15.233(1) ("a person has a right to inspect, copy, or receive copies of the requested public record of the public body"), and (2) providing paper copies of email messages was not the most economical method of complying with his request under MCL 15.234(3) ("A public body shall utilize the most economical means available for making copies of public records."). Plaintiff cites in support of his argument *Kestenbaum v Mich State Univ*, 414 Mich 510, 558; 327 NW2d 783 (1982),[5] and *Oakland Co Treas v Title Office, Inc*, 245 Mich App 196; 627 NW2d 317 (2001), overruled by *Title Office, Inc v Van Buren Co Treas*, 469 Mich 516; 676 NW2d 207 (2004).[6] Although these opinions are not binding precedent, there is some authority that supports plaintiff's first

---

[5] *Kestenbaum* contained two opinions, each sign by only three justices. Plurality opinions are not binding precedent because they did not have a majority of the Court. See *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 115 n 7; 595 NW2d 832 (1999).

[6] Overruled opinions are not binding precedent. See *Sumner v Gen Motors Corp (On Remand)*, 245 Mich App 653, 665; 633 NW2d 1 (2001).

contention. See *Farrell v Detroit*, 209 Mich App 7, 14; 530 NW2d 105 (1995) (A public body "is required to provide the 'public record' [a person] request[s], not just the information contained therein."). Nevertheless, we agree with defendants and the trial court that providing paper copies of the requested email messages in this case did not violate the FOIA.

First, in his April 10, 2013 letter, plaintiff stated that he "preferred that these [requested email messages] be produced in electronic form if possible . . . ." Second, plaintiff did not dispute that the vast majority of the email messages, at the time that plaintiff requested them, were not "owned, used, in the possession of, or retained" by the township. Rather, the vast majority of the email messages were possessed and resided in electronic format in seven or more different personal or private business computers or networks. It appears, and plaintiff did not present evidence otherwise, there simply was no single data base of email owned or possessed by the township that could be readily copied and provided to plaintiff. The FOIA "does not require a public body to make a compilation, summary, or report of information," MCL 15.233(4), or "create a new public record," MCL 15.233(5), except in circumstances not present in this case. Third, plaintiff included in his request for copies of records items that were patently exempt, such as matters the township considered in closed session and communications with attorneys. Thus, plaintiff's FOIA request necessitated a review by township officials, and possibly counsel, for the purposes of separation of exempt from nonexempt material. MCL 15.244(1). There was no evidence to rebut an affidavit of the township FOIA coordinator that such a review could not be conducted regarding the requested email messages that resided on several different disparate private computers and networks unless the messages were printed on paper.

Finally, plaintiff does not contest that the township in assessing a fee for the copies of email messages complied with MCL 15.234(1), which limits a fee for copies to "the actual incremental cost of duplication or publication including labor, the cost of search, examination, review, and the deletion and separation of exempt from nonexempt information as provided in [MCL 15.244]." Indeed, plaintiff did not produce any evidence to contest the affidavit of the township's FOIA coordinator that providing paper copies of the email messages was "the most economical means" of complying with plaintiff's FOIA request. Consequently, we agree with the trial court that plaintiff did not violate MCL 15.234(3) by providing paper copies of the requested email messages.

For all of the foregoing reasons, the trial court properly granted defendants summary disposition regarding plaintiff's FOIA claims.

We affirm. No taxable costs awarded pursuant to MCR 7.219 as this involved a question of public policy.

/s/ Jane E. Markey
/s/ Christopher M. Murray
/s/ Stephen L. Borrello