*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VLADIMIR GERTSBERG,

      Plaintiff-Appellant,

v

MUNICIPAL EMPLOYEES' RETIREMENT
SYSTEM OF MICHIGAN,

      Defendant-Appellee.

UNPUBLISHED
September 19, 2024

No. 366720
Eaton Circuit Court
LC No. 2023-000416-CZ

Before: PATEL, P.J., and YATES and SHAPIRO,* JJ.

PER CURIAM.

Plaintiff, Vladimir Gertsberg, appeals by right the trial court's order granting summary disposition in favor of defendant, the Municipal Employees' Retirement System of Michigan (MERS), denying plaintiff's cross-motion for summary disposition, and dismissing plaintiff's claims under the Freedom of Information Act (FOIA), MCL 15.231, *et seq.* We affirm.

## I. BACKGROUND

MERS is an independent public corporation established under the authority of the Municipal Employees Retirement Act of 1984, MCL 38.1501, *et seq.*, to administer retirement systems for participating municipalities and other public entities. Plaintiff's wife was employed by Lapeer County, a MERS employer, from January 2001 through August 2015. During that time, Mrs. Gertsberg participated in the county's defined-benefit plan administered by MERS. In October 2015, MERS sent Mrs. Gertsberg a letter informing her that she was eligible to receive "full retirement benefits" beginning November 1, 2015. The letter informed her to "complete and submit the Application for Defined Benefit Retirement . . . 45 days before [her] retirement date." Significantly, the letter advised that "any delay in applying" for pension benefits would not

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

increase her future monthly benefit, and would "result in a loss of retirement benefits for prior month(s)."

For reasons not clear from the record, Mrs. Gertsberg did not apply for her pension until April 2018. She began receiving pension benefits in May 2018. She sought retroactive payment of benefits dating back to November 2015. MERS denied her request for retroactive benefits and informed her of her appeal rights. Mrs. Gertsberg unsuccessfully challenged the denial in an administrative action. Her appeal to the circuit court was likewise unsuccessful.

Thereafter, plaintiff sent numerous FOIA requests to MERS seeking a variety of documents.[1] According to plaintiff, "[f]or many years MERS has been running a subterfuge scheme by embezzling, so called, 'retroactive benefits,' " and MERS sought to "cover the embezzlement of retirement funds and defraud IRS, Michigan Treasury, MERS members, and FOIA requestors." Plaintiff's FOIA requests, including the one at issue here, appear to be designed to unearth evidence to establish plaintiff's theory. MERS maintains that it "properly responded to each one of [the] FOIA requests and specifically informed Plaintiff that the requested documents 'do not exist in MERS' possession, custody or control . . . because pension benefits are not 'forfeited' under MERS' defined-benefit Plan."

On August 9, 2022, plaintiff sent MERS the FOIA request at issue in this case. Quoting a section of the plan documents dealing with "forfeitures" of benefits, plaintiff requested "a single adoption . . . agreement"[2] for any MERS employer who had at least one employee who forfeited benefits:

Section 87(15) of the MERS Plan Document states the following:

*Forfeitures arising from severance of employment, death, or for any other reason, shall not be applied to increase the benefits any employee would otherwise receive under the Plan at any time prior to the termination of the plan or the complete discontinuance of all employer contributions thereunder. The amounts so forfeited shall be used as soon as possible to reduce the employer's contributions under the Plan, and the Plan may anticipate the effect of forfeitures for all purposes in determining the actuarial costs of the Plan*

I believe that during many years of MERS operations, there must have been at least one employee/retiree who forfeited the benefits in accordance with Section 87(15).

Would you please provide me with a single adoption/initiation agreement for the employer that had at least one employee who forfeited his/her benefits?

---

[1] MERS claims that plaintiff sent "more than 200" FOIA requests since October 2019.

[2] An "adoption agreement" is a contract between MERS and a participating municipality (or other entity) under which the entity becomes a MERS participant.

If this request requires payment, please provide me with an estimate, for my approval, before proceeding.

Plaintiff followed up his request with several e-mails in the same e-mail thread. On August 22, 2022, he sent a "reminder" e-mail stating, "There was no response to FOIA Request from 08/09/2022. Please respond." On February 6, 2023 he sent an e-mail that began, "I must ask you again to respond to my request," and restated verbatim the FOIA request made in the August 9, 2022 e-mail.[3] Plaintiff sent three additional "reminder" e-mails on February 15, 22, and 23, 2023, demanding a response to his FOIA request. It is undisputed that plaintiff did not receive a response to these e-mails.

On March 2, 2023, plaintiff filed a complaint against MERS in the Ingham Circuit Court seeking to compel a response to his FOIA request. The case was transferred to Eaton Circuit Court under a stipulated order. In lieu of a responsive pleading, MERS moved for summary disposition under MCR 2.116(C)(7) and, alternatively, (10). MERS argued that plaintiff's August 9, 2022 FOIA request was deemed denied when MERS did not respond within five business days. Because plaintiff filed his complaint more than 180 days after the date his request was deemed denied, MERS asserted the complaint was time-barred. Alternatively, MERS argued that it did not respond to plaintiff's FOIA request "because no such records exist within MERS' possession, custody, or control responsive to his request." MERS asserted that plaintiff knew from MERS's responses to his previous FOIA requests that MERS's position was that there was no information responsive to his request. MERS contended that it "has informed Plaintiff that it does not recognize forfeitures of any vested defined-benefit retirement benefits under its Plan and has denied record requests seeking to confirm such forfeiture for the reason that no such records exist . . . ." MERS argued that plaintiff received a response to his FOIA request "in multiple other contexts and communications, and has himself acknowledged MERS' position regarding the substance of his request," and thus could not establish a genuine issue of material fact regarding his claim.

In response, plaintiff "readily admit[ted] that it is untimely to file a lawsuit on February 28, 2023, regarding [the] FOIA request from August 9, 2022." But maintained that the February 6, 2023 reminder e-mail constituted a new FOIA request and thus his complaint was timely. Plaintiff further acknowledged that MERS's position was "that there are no vested defined benefit forfeitures under its Plan . . . ." But plaintiff contended that MERS's position was false. Finally, plaintiff argued that, even if there were no documents responsive to his request, MCL 15.235(2) required MERS to provide him with a notice of denial.

Plaintiff also filed his own motion for summary disposition under MCR 2.116(C)(10). For the first time, plaintiff identified a specific document that he asserted would be responsive to the

---

[3] Other than the additional language after the greeting and a subject line that stated, "FOIA Request from 02/06/2023[,]" the only difference from the August 9, 2022 e-mail was that the following was in boldface font in the February 6, 2023 e-mail: "Would you please provide me with a single adoption/initiation agreement for the employer that had at least one employee who forfeited his/her benefits?"

FOIA request at issue here—the "adoption agreement for Alger County." The only relief he requested was an order compelling production of that particular document and awarding costs and attorney fees.

At the hearing on the parties' dispositive motions, MERS's counsel told the trial court that, a week earlier, MERS offered to produce the Alger County adoption agreement that plaintiff requested in his motion, but plaintiff refused "for reasons we don't understand." MERS's counsel repeated the offer on the record. Plaintiff refused to accept defendant's offer, explaining that he "doesn't require any more production of the Alger adoption agreement because the plaintiff really doesn't know the internal operation of MERS, when they violate the law, when they don't violate the law." Plaintiff then made an "offer" to MERS: "If there is no responsive record, if this is the operation, we can settle this issue if they provide notice of denial that they do not perform forfeitures at all. And this will satisfy Plaintiff. Or, they can produce any other record, which will be responsive to my request."

The trial court rejected plaintiff's argument that his February 6, 2023 e-mail constituted a new FOIA request, and concluded that plaintiff's claim was time-barred. The court further concluded that it could not compel production of documents that MERS has made clear to plaintiff on numerous occasions do not exist. The trial court granted defendant's motion for summary disposition under MCR 2.116(C)(7) and (10), and denied plaintiff's motion as moot. This appeal followed.

## II. STANDARDS OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).

Summary disposition is appropriate under MCR 2.116(C)(7) when a claim is barred by a statute of limitations. As this Court has explained:

> When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Dextrom v Wexford Co*, 287 Mich App 406, 428-429; 789 NW2d 211 (2010) (citations omitted).]

Whether a statute of limitations bars a claim is a question of law that this Court reviews de novo when the underlying facts are not disputed. *O'Leary v O'Leary*, 321 Mich App 647, 651; 909 NW2d 518 (2017).

Summary disposition under MCR 2.116(C)(10) is warranted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing

a motion for summary disposition under MCR 2.116(C)(10), we must consider the evidence submitted by the parties in the light most favorable to the non-moving party. *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (cleaned up). Summary disposition under MCR 2.116(C)(10) is proper when, after considering all evidence in the light most favorable to the non-moving party, the court determines there is no genuine issue of material fact. *Id*.

The interpretation and application of a statute is a question of law that we also review de novo. *Boyle v Gen Motors Corp*, 468 Mich 226, 229; 661 NW2d 557 (2003). We likewise review "de novo whether the trial court properly interpreted and applied the FOIA." *Mich Open Carry, Inc v Dep't of State Police*, 330 Mich App 614, 621; 950 NW2d 484 (2019). The court's factual findings underlying its application of FOIA are reviewed for clear error. *Id*. "Clear error exists only when the appellate court is left with the definite and firm conviction that a mistake has been made." *Herald Com Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 471; 719 NW2d 19 (2006) (cleaned up).

## III. ANALYSIS

Plaintiff argues that the trial court erred in granting summary disposition in favor of MERS under MCR 2.116(C)(7) and (10). We disagree.

Under "FOIA, a public body must disclose all public records not specifically exempt under the act." *Scharret v City of Berkley*, 249 Mich App 405, 411; 642 NW2d 685 (2002), citing MCL 15.233(1). A public body responding to a FOIA request is generally not required to "make a compilation, summary, or report of information," MCL 15.233(4), or to "create a new public record," MCL 15.233(5), subject to certain exceptions not at issue in this case. "FOIA does not require that information be recorded; it only gives a right of access to records in existence." *Walloon Lake Water Sys, Inc v Melrose Twp*, 163 Mich App 726, 731; 415 NW2d 292 (1987).

Plaintiff argues that the trial court erred in granting summary disposition in favor of MERS under MCR 2.116(C)(10) because MERS modified the scope of plaintiff's FOIA request and refused to provide a notice of denial. We disagree. Plaintiff's FOIA request asked for "a single" adoption agreement for a MERS employer that had "at least one employee who forfeited his/her benefits." MERS previously told plaintiff that "defined benefit pension" benefits were "never 'forfeited.' " Plaintiff concedes that he was fully aware when he pursued this FOIA action that MERS's position was that there are no vested defined benefit forfeitures under its plan and thus there were no documents responsive to plaintiff's FOIA request. Nonetheless, plaintiff pursued this lawsuit because he believed that MERS's position was "false." The issue is whether plaintiff offered evidence that would raise a question of fact, aside from his own strident assertions that MERS was lying.

Plaintiff characterizes the amount of benefits his wife would have been paid between November 2015 (when she was first eligible) and May 2018 (when she finally received benefits after applying in April 2018) as "forfeited." The plan documents clearly state that a retiree who is otherwise eligible for benefits has a right to receive them only upon submission and approval of a retirement application, and then payment of retirement benefits will commence on the first day of the month after the necessary paperwork is filed. Thus, until a retirement application is filed, a

retiree is not entitled to retirement benefits and there are no benefits to be "forfeited." The plan documents also clearly state that no retroactive payment of benefits is available for retirees who apply late. Plaintiff's belief that his wife was entitled to retroactive benefits is premised on both a fundamental misunderstanding of how the pension plan worked,[4] and an administrative-law decision in an unrelated case that made an exception to the no-retroactive-benefits rule under circumstances entirely inapplicable here. See *Horton v MERS*, proposal for decision of the Municipal Employees' Retirement Board, dated June 16, 2014.[5]

Unlike the letter to the petitioner in *Horton*, MERS sent Mrs. Gertsberg a letter that clearly stated the date she was eligible to receive retirement benefits, and stressed that she needed to apply for those benefits to receive them. The letter plainly stated that "[a]ny delay in applying for your pension benefit will not increase your monthly payment, and will result in a loss of retirement benefits for prior month(s)." It also plainly explained, unlike the letter to the petitioner in *Horton*, that there was no restriction against working for another MERS employer while receiving benefits, and that she could apply as soon as her employment terminated.

Plaintiff characterizes the ALJ's recommendation in *Horton* as "undisputed evidence" of MERS's "embezzlement scheme." In doing so, plaintiff makes accusations of wrongdoing that lack any evidentiary support aside from plaintiff's conjecture. The ALJ in *Horton* found that MERS had tried but failed to institute an adequate system for notifying and educating retirees about their benefits. But plaintiff maintains that MERS purposefully tricked its retirees out of benefits. Plaintiff escalates his accusations by asserting, without further evidence, that "[t]he

---

[4] Plaintiff repeatedly asked for an accounting of the total value of his wife's pension, and MERS repeatedly explained that it was impossible to provide that because there was no sum certain attributable to any single retiree. Instead, once a retiree under the at-issue MERS plan retires, a guaranteed monthly amount is determined on the basis of the plan formula, and is paid to the retiree for the rest of his or her life, regardless of how long the retiree lives and how much is ultimately paid out. If a retiree leaves a surviving spouse after the retiree's death, the surviving spouse would begin receiving those payments for the rest of his or her life, regardless of how long the surviving spouse lives.

[5] In *Horton*, the petitioner had been employed by two different MERS-participating cities: Springfield and Battle Creek. The petitioner left her job with Springfield in 2005 to work for Battle Creek, and was fully vested in her pension plan through Springfield at that time. In 2007, she received a letter from MERS stating that she would be eligible to receive benefits in November 2009. But the petitioner believed that she could not collect those benefits while she was still working. The petitioner also did not think she could collect her MERS retirement from Springfield while she was still working for another MERS employer. When the petitioner applied for her retirement benefits in 2013, she asked for payment of retroactive benefits back to her initial date of eligibility, on the theory that she would have applied then if MERS had sufficiently informed her of the right to do so while she was still working. Reasoning that MERS had a fiduciary duty to its members to make sure they were fully aware of their rights, and that the petitioner had not been so informed and thus reasonably misunderstood those rights, the ALJ concluded that, "under the circumstances of this case," the failure to pay the petitioner retroactive benefits constituted a violation of that fiduciary duty, and recommended granting the petition.

-6-

whole thing looked like a kickback," and that the MERS Board approved the ALJ's recommendation in *Horton* only because it was "[e]vidently . . . afraid to lose in circuit court after [the] ALJ decision[.]" But the ALJ explicitly stated that MERS had acted in good faith and had not deliberately violated any fiduciary duty:

> Nothing in this Opinion should be interpreted to imply a deliberate violation of fiduciary responsibilities by MERS. Clearly, staff and the Board have, in good faith, been grappling with, and attempting to resolve this issue for a number of years. The policy of posting retirement eligibility on its website appears to have been designed to alert former members who had failed to provide new addresses after moving.

> However, the policy does not seem to have solved the problem in all cases. [*Horton* ALJ recommendation, 9-10.]

Because plaintiff's theory of MERS's alleged criminal wrongdoing is entirely unsupported by anything other than his conjecture, we decline his invitation to share in that speculation based on a skewed reading of the *Horton* ALJ report. For this reason, plaintiff's reliance on this Court's opinion in *Hartzell v Mayville Community Sch Dist*, 183 Mich App 782; 455 NW2d 411 (1990), is misplaced. The *Hartzell* Court acknowledged that a public body cannot be expected to produce a record that does not exist, but this Court stated that that does not excuse the public body from responding to the FOIA request. *Id.* at 787. In this case, plaintiff does not dispute that he has submitted over 200 FOIA requests to MERS since 2019. MERS maintains that it "properly responded to each one of [the prior] FOIA requests and specifically informed Plaintiff that the requested documents 'do not exist in MERS' possession, custody or control . . . because pension benefits are not 'forfeited' under MERS' defined-benefit Plan." And plaintiff concedes that he was fully aware when he pursued this FOIA action that MERS's position was that there are no vested defined benefit forfeitures under its plan and thus there were no documents responsive to plaintiff's FOIA requests. We conclude that the trial court did not err by finding that plaintiff failed to raise any genuine issue of material fact on this issue and thus MERS was entitled to summary disposition under MCR 2.116(C)(10).

Plaintiff also argues that the trial court erred by concluding that his complaint was filed after the expiration of the applicable limitations period and granting summary disposition to MERS under MCR 2.117(C)(7). We disagree. "MCL 15.235 provides that, unless otherwise agreed to in writing, a public body must respond to a request for a public record within five business days after it receives the request and that the failure to so respond constitutes the public body's final determination to deny the request." *Scharret*, 249 Mich App at 411-412. Upon denial of a FOIA request, the requestor may either submit an appeal in writing to the public body's head "that specifically states the word 'appeal' " or file a lawsuit in the circuit court within 180 days of the denial. MCL 15.235(1).

On August 9, 2022, plaintiff sent the subject FOIA request in an e-mail. Under MCL 15.235(1), the request was deemed received by MERS on August 10, 2022.[6] MERS had five business days, or until August 17, 2022, to respond to the request. MCL 15.235(2). Because plaintiff did not receive a response, the failure to respond constituted defendant's denial of his FOIA request. *Scharret*, 249 Mich App at 411-412. Plaintiff had 180 days, or until February 13, 2023, to commence his action in circuit court. MCL 15.240(1)(b). Because plaintiff did not file his complaint until March 2, 2023, his action was untimely.

In response to MERS's motion for summary disposition, plaintiff "readily admit[ted] that it is untimely to file a lawsuit on February 28, 2023, regarding [the] FOIA request from August 9, 2022." But plaintiff maintains that his February 6, 2023 follow-up e-mail constituted a new FOIA request, thus rendering his complaint timely. Plaintiff's February 6, 2023 request was a verbatim "cut and paste" of his August 9, 2022 request, and it was included in the same e-mail chain. However, plaintiff added some additional language to his February 6, 2023 e-mail—between the greeting and the text of his original request, plaintiff inserted a sentence that began, "I must ask you again to respond to my request," and another that stated, "You continuously refuse to honor this request." Other than the additional language after the greeting and a revised subject line, the only other difference from the August 9, 2022 e-mail was that the following was in boldface font in the February 6, 2023 e-mail: "Would you please provide me with a single adoption/initiation agreement for the employer that had at least one employee who forfeited his/her benefits?" The February 6. 2023 e-mail was not a new FOIA request; it was a demand to respond to the initial August 9, 2022 request. Accordingly, the trial court did not err by concluding that plaintiff's complaint was untimely.

Affirmed. As the prevailing party, defendant may tax costs under MCR 7.219.

/s/ Sima G. Patel
/s/ Christopher P. Yates
/s/ Douglas B. Shapiro

---

[6] "A written request made by . . . electronic mail . . . is not received by a public body's FOIA coordinator until 1 business day after the electronic transmission is made." MCL 15.235(1).